Brooke B. Murphy
MURPHYMYERS, PLLC
27 N. 27th St., Suite 21A
P.O. Box 1619
Billings, Montana 59103-1619
Telephone: (406) 732-6868
Fax: (406) 204-4662
brooke@murphymyers.com
*Attorney for Safeco Insurance Company of America*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | Cause No.: |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| - v - | |
| TAYLOR BOWMAN and JOSHUA HENDERSON | |
| Defendant(s). | |

COMES NOW Plaintiff, Safeco Insurance Company of America, by and through its counsel, and for its *Complaint for Declaratory Judgment* against Defendant Taylor Bowman and Defendant Josh Henderson alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Safeco Insurance Company of America ("Safeco") is an insurance company organized under the laws of the State of New Hampshire with its

principal place of business at 175 Berkeley Street, Boston, Massachusetts. Safeco is authorized to conduct business in the State of Montana.

2.    Defendant Taylor Bowman is a Montana citizen residing at 52 Kaddy Lane in Whitehall, Montana.

3.    Defendant Joshua Henderson is a Montana citizen residing at 1700 Utah Avenue in Butte, Montana.

4.    The Federal District Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists because Safeco is a citizen of a different state than Defendants.

5.    Venue is proper in the United States District Court, District of Montana, Butte Division pursuant to 28 U.S.C. §1391(b) because all defendants reside in this district and because the events or omissions giving rise to this lawsuit took place in this judicial district.

## THE POLICY

6.    Safeco Homeowners Policy Number OM2768369, provides homeowners insurance coverage to named insureds Robert Bowman and Barbara Bowman (the "Policy"). The Policy identifies the insured location as 52 Kaddy Ln, Whitehall, MT. Defendant Bowman's parents are the named insureds under the Policy, and, upon information and belief, Defendant Bowman resides at the

insured location with his parents. The Policy extended coverage for a policy period incepting on December 11, 2022, and continuing until December 11, 2023. A true and correct copy of the Policy is attached hereto as **Exhibit A**.

7.    The Policy, in Section II-Liability Coverages, extends Personal Liability Coverage (Coverage E) for damages because of ***bodily injury*** only if the damages are caused by an ***occurrence*** as defined by the Policy, subject to the Policy's terms, conditions, exclusions and limitations.

8.    ***Occurrence*** is defined as "an accident, including exposure to conditions which results in" either ***bodily injury*** or ***property damage*** as defined by the Policy.

9.    The Policy defines ***bodily injury*** as "bodily harm, sickness or disease, including required care, loss of services and death resulting there from."

10.    The Policy states that Personal Liability Coverage is excluded when ***bodily injury*** or ***property damage*** was caused by any exclusion in the Policy.

11.    Exclusion 1.a. excludes Personal Liability Coverage and Medical Payments to Others Coverage under the Policy when the bodily injury was intended or expected by the insured. In that regard, the Policy states:

**LIABILITY LOSSES WE DO NOT COVER**

**1.**  Coverage **E** – Personal Liability and Coverage **F** – Medical Payments to Others do not apply to ***bodily injury*** or ***property damage***:

    **a.** Which is expected or intended by an ***insured*** or which is the foreseeable result of an act or omission intended by any ***insured***;

This exclusion applies even if:

      (1) Such ***bodily injury*** or ***property damage*** is of a different kind or degree than expected or intended; or

      (2) Such ***bodily injury*** or ***property damage*** is sustained by a different person, or persons, than expected or intended.

This exclusion does not apply to ***bodily injury*** resulting from the use of reasonable force by any ***insured*** to protect persons or property.

12.    Exclusion 1.b. excludes Personal Liability Coverage and Medical Payments to Others Coverage under the Policy when it was caused by a criminal act. In that regard, the Policy states:

**LIABILITY LOSSES WE DO NOT COVER**

**1.** Coverage **E** – Personal Liability and Coverage **F** – Medical Payments to Others do not apply to ***bodily injury*** or ***property damage***:

…

    **b.** which results from violation of criminal law committed by, or with the knowledge or consent of any ***insured.***

This exclusion applies whether or not any ***insured*** is charged or convicted of a violation of criminal law, or local or municipal ordinance.

13.    Exclusion 1.k. excludes Personal Liability and Medical Payments to Others Coverage under the Policy when the ***bodily injury*** arises out of physical abuse. In that regard, the Policy states:

**LIABILITY LOSSES WE DO NOT COVER**

**1.** Coverage **E** – Personal Liability and Coverage **F** – Medical Payments to Others do not apply to ***bodily injury*** or ***property damage***:

**…**

    **k.** arising out of physical or mental abuse, sexual molestation, or sexual harassment.

## THE UNDERLYING LAWSUIT AND FACTS PERTINENT TO COVERAGE

14. Joshua Henderson filed suit against Defendant Taylor James Bowman on or about April 12, 2023. The lawsuit is styled *Josh Henderson, Plaintiff, v. Silver Bow Pizza and Taylor Bowman, Defendants,* Cause No. DV 23-106, Robert J. Whelan presiding ("Underlying Lawsuit").

15. According to the Underlying Lawsuit, on or about February 17, 2023, Defendant Taylor Bowman ("Defendant Bowman") was involved in a physical altercation with Defendant Joshua Henderson ("Joshua Henderson") at Silverbow Pizza in Butte, Montana in which Defendant Bowman "savagely beat" Joshua Henderson. A true and correct copy of the Underlying Lawsuit is attached hereto as **Exhibit B.**

16. The Underlying Lawsuit states that "without warning" Defendant Bowman "lunged toward" Joshua Henderson and "began to beat him, then drag him, breaking his ankle in the process and punching his face/neck."

17. According to the Underlying Lawsuit, other restaurant patrons pulled Defendant Bowman off Joshua Henderson to "end the beating," and Defendant

Bowman was forced to leave Silverbow Pizza by other patrons. Defendant Bowman continued to shout threats at Joshua Henderson as he was escorted out of the building.

18.     The Underlying Lawsuit alleges Joshua Henderson suffered bodily injury as a result of Defendant Bowman's actions.

19.     The Underlying Lawsuit alleges that Defendant Bowman was criminally charged with felony aggravated assault due to his actions on February 17, 2023; those charges were subsequently amended to misdemeanor assault.

20.     On October 18, 2023, Defendant Bowman plead guilty to misdemeanor assault. In so doing, Defendant Bowman admitted that he "purposely and knowingly used physical force or conduct" and thereby caused bodily injury to Joshua Henderson. Defendant Bowman admitted that on November 2, 2023, he "punched [Joshua Henderson] in the face and also took [Joshua Henderson] to the ground by jumping on his back, which resulted in a fracture of [Joshua Henderson's] lower leg." See Transcript of Change of Plea and Sentencing Hearing, Montana Second Judicial District Court, Silver Bow County, Cause No. DV 23-105 (October 18, 2023) a true and correct copy of which is attached hereto as **Exhibit C.**

21.     In Count I of the Underlying Lawsuit, Joshua Henderson asserts a claim for negligence against Defendant Bowman premised on the allegation that

COMPLAINT FOR DECLARATORY JUDGMENT                                    6

Defendant Bowman breached the duty of care when he "drunkenly assaulted" Joshua Henderson.

22.    In Count IV of the Underlying Lawsuit, Joshua Henderson asserts a claim for assault against Defendant Bowman, premised on the allegation that Defendant Bowman "unprovoked, began to savagely beat Plaintiff" which caused bodily injury to Joshua Henderson.

23.    In Count V of the Underlying Lawsuit, Joshua Henderson asserts a claim for battery against Defendant Bowman, premised on the allegation that Defendant Bowman "pulled Plaintiff from his table in the Siver Bow restaurant, and, unprovoked, began to savagely beat Plaintiff" which caused bodily injury to Joshua Henderson.

24.    Each of Counts I, IV, and V against Defendant Bowman are premised on intentional conduct that does not constitute an "occurrence" as defined by the Policy.

25.    Each of Counts I, IV, and V against Defendant Bowman allege intentional, criminal, and/or physically abusive conduct which is excluded from coverage under the Policy pursuant to various policy exclusions.

## THE INSURANCE CLAIM

26.    Defendant Bowman tendered the Underlying Lawsuit to Safeco for defense and indemnity under the Policy.

27.    Safeco promptly acknowledged the tender and agreed to defend Defendant Bowman subject to a full reservation of rights because Safeco does not believe the Policy affords coverage for the claims and damages alleged in the Complaint.

28.    In its reservations of rights letters to Defendant Bowman, Safeco reserved its right to file a declaratory judgment action, obtain a judicial determination that it did not have a duty to defend and/or indemnify Defendant Bowman, and to withdraw from the defense.

29.    True and correct copies of Safeco's July 21, 2023, and September 25, 2023, reservation of rights letters are attached hereto as **Exhibit D** and **Exhibit E**, respectively. Attached as **Exhibit F** is Safeco's final letter to Defendant Bowman which was sent before filing the instant action.

## <u>CLAIM FOR DECLARATORY JUDGMENT</u>

30.    Pursuant to the express terms, conditions, exclusions and limitations of the Policy, and Montana law, there is no Personal Liability Coverage available to Taylor Bowman for the claims and damages alleged in the Underlying Lawsuit.

31.    The allegations contained within the Underlying Lawsuit do not trigger a duty to defend.

32.    The allegations contained within the Underlying Lawsuit do not trigger a duty to indemnify.

33.     Coverage E – Personal Liability Coverage –extends coverage only if a claim is made or suit is brought against an insured "for damages because of bodily injury or property damaged caused by an occurrence to which this coverage applies."

34.     Defendant Bowman's conduct, and the description of Defendant Bowman's conduct in the Underlying Lawsuit, does not constitute an "occurrence" as defined by the Policy.

35.     Because the Underlying Lawsuit does not allege an "occurrence" as required by the Policy to trigger coverage, Safeco does not have an obligation to defend the Underlying Lawsuit or indemnify Defendant Bowman for any damage award or settlement.

36.      Alternatively, and to the extent the conduct alleged in the Underlying Lawsuit constitutes an "occurrence" as defined by the Policy (which Safeco denies), several exclusions apply which exclude coverage for the claims asserted and the damages sought in the Underlying Lawsuit.

37.     Defendant Bowman pled guilty to criminal charges directly related to and arising out of the allegations made in the Underlying Lawsuit. Defendant Bowman further admitted his actions in assaulting or physically abusing Henderson were committed purposefully and knowingly and that his intentional and/or criminal acts lead directly to Joshua Henderson's claimed injuries and damages.

38.    The injuries alleged in the Underlying Lawsuit were either expected or intended by Defendant Bowman or were the foreseeable result of an act or omission intended by Defendant Bowman, and, therefore, Exclusion 1.a. applies to exclude coverage.

39.    Separately, and as an additional basis for Safeco's belief there is no coverage under the Policy, Exclusion 1.b. excludes coverage for bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any insured."

40.    Exclusion 1.b. applies to exclude coverage for the allegations in the Underlying Lawsuit and any damages that may be awarded against Defendant Bowman.

41.    Separately, and as an additional basis for Safeco's belief there is no coverage under the Policy, Exclusion 1.k. excludes coverage for bodily injury "arising out of physical or mental abuse…."

42.    Defendant Bowman's alleged assault of Joshua Henderson and/or actions on February 17, 2023, constitute physical abuse and are therefore excluded from coverage under the Policy.

43.    The above exclusions apply to exclude coverage for the claims and damages alleged in the Underlying Lawsuit.

44.    For these reasons, Safeco does not have a duty to defend and/or indemnify Defendant Bowman with respect to the Underlying Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Safeco respectfully seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, as follows:

1.    For a declaration that the Policy does not provide coverage to Defendant Bowman for the claims asserted by Joshua Henderson in the Underlying Lawsuit.

2.    For a declaration that Safeco has no duty to defend Defendant Bowman for any of the claims asserted against Defendant Bowman in the Underlying Lawsuit.

3.    For a declaration that Safeco has no duty to indemnify Defendant Bowman for any damages that may be awarded in the Underlying Lawsuit or any settlements that may be reached with respect to Joshua Henderson's claims against Defendant Bowman or any other party.

4.    For an award of Safeco's attorney's fees and costs in this action.

5.    For such other declaratory relief as the Court deems just and equitable under the circumstances.

DATED this 16th day of April, 2024.

**MURPHYMYERS, PLLC**

<u>/s/ Brooke B. Murphy</u>
By: Brooke B. Murphy
MurphyMyers PLLC
*Attorney for Safeco Insurance Company of America*

## DEMAND FOR JURY TRIAL

Plaintiff Safeco Insurance Company of America demands a trial by jury on all issues so triable.

DATED this 16th day of April, 2024.

**MURPHYMYERS, PLLC**

<u>/s/ Brooke B. Murphy</u>
By: Brooke B. Murphy
MurphyMyers PLLC
*Attorney for Safeco Insurance Company of America*

## CERTIFICATE OF SERVICE

I certify that on the 16th day of April, 2024, a true and correct copy of foregoing was sent via electronic mail and was mailed, postage prepaid upon the following:

1. Clerk of Court

2. Bradley Jones
   Doubek, Pyfer & Storrar
   307 North Jackson St PO Box236
   Helena, MT 59624-0236

*Attorneys for Joshua Henderson*

By: /s/ Kylee Perez
For MURPHYMYERS PLLC

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:        ROBERT BOWMAN
                        BARBARA BOWMAN

POLICY NUMBER:          OM2768369

POLICY DATES:           DEC. 11, 2022 TO DEC. 11, 2023


Branden Kinkead, archivist of

SAFECO Insurance Company of America   , has compared the attached copies of the insurance policy number listed above and its endorsements with the original records of the policy of insurance and endorsements contained in the Company's files and that we certify that the same is a true and exact recital of all the provisions in the said original policy and endorsements attached thereto.


Branden Kinkead
Policy Copy Archivist


May 25, 2023


EXHIBIT A

**Safeco** Insurance™
A Liberty Mutual Company

A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL    MT   59759-0964

December 22, 2022

Policy Number: OM2768369
24-Hour Claims: 1-800-332-3226
Policy Service: (406) 287-2900
Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**

ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT  59759-0884

The following changes were made to the policy covering your home at 52 KADDY LN,
WHITEHALL MT 59759-9747: including those requested by you or your agent or broker:

- We will send future renewal premium bills to you.   We will send copies of the bills to your
  mortgage servicing agency.
- The following mortgage servicing company is added:
    FIRST CITIZENS BANK OF BUTTE
    3220 HARRISON AVE
    BUTTE MT  59701

These changes are effective December 22, 2022.   Please place this letter with your insurance
policy.

No additional premium or credit resulted from this change.

If you have any questions or wish to make a change to your policy, please call:   (406) 287-2900.

We appreciate the opportunity to serve you.   Thank you.

Personal Lines Underwriting

**SAFECO INSURANCE COMPANY OF AMERICA**
P O BOX 704000, SALT LAKE CITY, UT 84170

EXHIBIT A

OC-429/EP 10/13



**Safeco** Insurance
A Liberty Mutual Company

### SAFECO INSURANCE COMPANY OF AMERICA
Administrative office:  175 Berkeley St., Boston, MA 02116 (A stock insurance company.)
### HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OM2768369

**POLICY PERIOD:  FROM:** DEC. 11, 2022 12:01 A.M.
**TO:** DEC. 11, 2023 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT  59759-0884

**AGENT:**
A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL        MT   59759-0964

**Valued Homeowners Customer Since: DEC. 11, 2019**

**INSURED LOCATION:**
52 KADDY LN
WHITEHALL MT  59759-9747

**POLICY SERVICE INFORMATION:**
**TELEPHONE:**  (406) 287-2900
**E-MAIL:**   AINSURANCEAGENCYFORYOU@GMAIL.COM
**WEBSITE:** www.safeco.com

**IMPORTANT MESSAGES**

- Your policy has changed effective December 22, 2022.

**LIMITS OF LIABILITY**
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $291,400 | $405,280 | $405,280 | $58,280 | $500,000 | $5,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.
AMOUNT
    Section I - Property Coverages                     $   5,000

PREMIUM
BASIC COVERAGES                                          $   1,798.00
OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES           $    270.00
DISCOUNTS AND SURCHARGES                                 $    -17.00

**TOTAL POLICY PREMIUM:**                                $   2,051.00

Premium Payer:   Insured

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
$2.00 per installment for recurring automatic deduction (EFT)
$5.00 per installment for recurring credit card or debit card
$6.00 per installment for all other payment methods

    Servicing Mortgagee
       FIRST CITIZENS BANK OF BUTTE
       3220 HARRISON AVE
       BUTTE MT  59701

EXHIBIT A
DATE PREPARED: DEC. 22 2022

**SAFECO INSURANCE COMPANY OF AMERICA**
**HOMEOWNERS POLICY DECLARATIONS**

CONTINUED                    **POLICY NUMBER:** OM2768369

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   **COVERAGE LEVEL: OPTIMUM**
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | | | | |
|---|---|---|---|---|---|
| a.Money, pre-paid cards... | $ 1,000 | h.Business Property | | | |
| b.Rare coins and currency... | $ 5,000 |   On Premises... | $ 3,000 | | |
| c.Securities, debit cards... | $ 5,000 |   Off Premises Sub-limit | $ 1,000 | | |
| d.Watercraft... | $ 3,000 | i.Tapes, records, discs... | $ 500 | | |
| e.Trailers... | $ 3,000 | j.Theft of rugs... | $ 10,000 | | |
| f.Theft of jewelry, watches... | $ 5,000 | k.Grave Markers... | $ 5,000 | | |
| g.Theft of silverware... | $ 5,000 | | | | |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | Limit | Premium |
|---|---|---|
| Loss Assessment Coverage | $ 5,000 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ 29,140 | Included |
| Refrigerated Spoilage Coverage | | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ 10,000 | Included |
| Reasonable Repairs | $ 5,000 | Included |
| Fire Department Service Charge | $ 5,000 | Included |
| Land Stabilization | $ 10,000 | Included |
| Arson Reward | $ 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ 5,000 | Included |
| Volunteer America | | Included |
|    Section I (All Perils Coverage) | | Included |
|    Section II - Liability Coverage | | Included |
|    Section II - Property Damage | $ 2,000 | Included |

| OPTIONAL COVERAGES | Limit | Premium |
|---|---|---|
|    Personal Property Replacement Cost | | Included |
|    Extended Dwelling Coverage | Up to 50% | Included |
|    Escape of Water from Sump (Building/Contents) | $ 25,000 | $ 174.00 |
|    Identity Recovery Coverage | $ 25,000 | $ 12.00 |
|    Equipment Breakdown Coverage | $ 50,000 | $ 24.00 |
|    Water Seepage or Leakage Coverage | $ 50,000 | $ 60.00 |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
|    Advance Quote Discount | | $ -17.00 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY:**

| | | |
|---|---|---|
| HOM-7301/EP 1/09 | - | PERSONAL PROPERTY REPLACEMENT COST |
| HOM-7300/EP 1/09 | - | EXTENDED DWELLING COVERAGE |
| HOM-7220/EP 1/09 | - | SAFECO OPTIMUM HOMEOWNERS COVERAGE |
| HOM-7311/EP 1/09 | - | ESCAPE OF WATER FROM SUMP/SUMP PUMP DRAIN (BLDG AND CONT) |
| HOM-7307/EP 1/09 | - | IDENTITY RECOVERY COVERAGE |
| HOM-7306/EP 1/09 | - | EQUIPMENT BREAKDOWN COVERAGE |
| HOM-7232/EP 1/09 | - | EXECUTION CLAUSE |
| HOM-7030/EP R1 1/09 | - | HOMEOWNERS POLICY |
| HOM-7100/MTEP R1 7/09 | - | SPECIAL PROVISIONS - MT |
| HOM-7332/EP 1/21 | - | WATER SEEPAGE OR LEAKAGE COVERAGE |

139BX

EXHIBIT A



Safeco Insurance™
A Liberty Mutual Company

A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL      MT  59759-0964

December 20, 2022

Policy Number:  OM2768369
24-Hour Claims:  1-800-332-3226
Policy Service:  (406) 287-2900
Online Account Services:  www.safeco.com

**THIS IS NOT A BILL.**

ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT  59759-0884

The following change was made to the policy covering your home at 52 KADDY LN, WHITEHALL
MT 59759-9747: including those requested by you or your agent or broker:

- Your location address is amended to read:
  52 KADDY LN
  WHITEHALL MT 59759-9747

This change is effective December 19, 2022.   Please place this letter with your insurance policy.

No additional premium or credit resulted from this change.

If you have any questions or wish to make a change to your policy, please call:   (406) 287-2900.

We appreciate the opportunity to serve you.   Thank you.

Personal Lines Underwriting



**SAFECO INSURANCE COMPANY OF AMERICA**
P O BOX 704000, SALT LAKE CITY, UT 84170

EXHIBIT A

OC-429/EP 10/13

**Safeco Insurance**
A Liberty Mutual Company

## SAFECO INSURANCE COMPANY OF AMERICA
Administrative office: 175 Berkeley St., Boston, MA 02116 (A stock insurance company.)

## HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OM2768369

**POLICY PERIOD: FROM:** DEC. 11, 2022 12:01 A.M.
**TO:** DEC. 11, 2023 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT 59759-0884

**AGENT:**
A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL      MT 59759-0964

**Valued Homeowners Customer Since: DEC. 11, 2019**

**INSURED LOCATION:**
52 KADDY LN
WHITEHALL MT 59759-9747

**POLICY SERVICE INFORMATION:**
**TELEPHONE:** (406) 287-2900
**E-MAIL:** AINSURANCEAGENCYFORYOU@GMAIL.COM
**WEBSITE:** www.safeco.com

**IMPORTANT MESSAGES**

- Your policy has changed effective December 19, 2022.

**LIMITS OF LIABILITY**
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $291,400 | $405,280 | $405,280 | $58,280 | $500,000 | $5,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

|  | AMOUNT |
|---|---|
| Section I - Property Coverages | $ 5,000 |

|  | PREMIUM |
|---|---|
| BASIC COVERAGES | $ 1,798.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $ 270.00 |
| DISCOUNTS AND SURCHARGES | $ -17.00 |

| TOTAL POLICY PREMIUM: | $ 2,051.00 |
|---|---|

**Premium Payer:** Insured

You may pay your premium in full or in installments. There is no installment fee for the following billing plans: Full Pay. Installment fees for all other billing plans are listed below. If more than one policy is billed on the installment bill, only the highest fee is charged. The fee is:
$2.00 per installment for recurring automatic deduction (EFT)
$5.00 per installment for recurring credit card or debit card
$6.00 per installment for all other payment methods



**SAFECO INSURANCE COMPANY OF AMERICA**
**HOMEOWNERS POLICY DECLARATIONS**

CONTINUED          **POLICY NUMBER:**  OM2768369

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   **COVERAGE LEVEL: OPTIMUM**
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | | |
|---|---|---|---|
| a.Money, pre-paid cards... | $ 1,000 | h.Business Property | |
| b.Rare coins and currency... | $ 5,000 | On Premises... | $ 3,000 |
| c.Securities, debit cards... | $ 5,000 | Off Premises Sub-limit | $ 1,000 |
| d.Watercraft... | $ 3,000 | i.Tapes, records, discs... | $ 500 |
| e.Trailers... | $ 3,000 | j.Theft of rugs... | $ 10,000 |
| f.Theft of jewelry, watches... | $ 5,000 | k.Grave Markers... | $ 5,000 |
| g.Theft of silverware... | $ 5,000 | | |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | Limit | Premium |
|---|---|---|
| Loss Assessment Coverage | $ 5,000 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ 29,140 | Included |
| Refrigerated Spoilage Coverage | | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ 10,000 | Included |
| Reasonable Repairs | $ 5,000 | Included |
| Fire Department Service Charge | $ 5,000 | Included |
| Land Stabilization | $ 10,000 | Included |
| Arson Reward | $ 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ 5,000 | Included |
| Volunteer America | | Included |
|    Section I (All Perils Coverage) | | Included |
|    Section II - Liability Coverage | | Included |
|    Section II - Property Damage | $ 2,000 | Included |

| OPTIONAL COVERAGES | Limit | Premium |
|---|---|---|
|    Personal Property Replacement Cost | | Included |
|    Extended Dwelling Coverage | Up to 50% | Included |
|    Escape of Water from Sump (Building/Contents) | $ 25,000 | $ 174.00 |
|    Identity Recovery Coverage | $ 25,000 | $ 12.00 |
|    Equipment Breakdown Coverage | $ 50,000 | $ 24.00 |
|    Water Seepage or Leakage Coverage | $ 50,000 | $ 60.00 |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
|    Advance Quote Discount | | $ -17.00 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY:**

    HOM-7301/EP 1/09      - PERSONAL PROPERTY REPLACEMENT COST
    HOM-7300/EP 1/09      - EXTENDED DWELLING COVERAGE
    HOM-7220/EP 1/09      - SAFECO OPTIMUM HOMEOWNERS COVERAGE
    HOM-7311/EP 1/09      - ESCAPE OF WATER FROM SUMP/SUMP PUMP DRAIN (BLDG AND CONT)
    HOM-7307/EP 1/09      - IDENTITY RECOVERY COVERAGE
    HOM-7306/EP 1/09      - EQUIPMENT BREAKDOWN COVERAGE
    HOM-7232/EP 1/09      - EXECUTION CLAUSE
    HOM-7030/EP R1 1/09   - HOMEOWNERS POLICY
    HOM-7100/MTEP R1 7/09 - SPECIAL PROVISIONS - MT
    HOM-7332/EP 1/21      - WATER SEEPAGE OR LEAKAGE COVERAGE

140X

EXHIBIT A

**Safeco** Insurance™
A Liberty Mutual Company

A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL    MT   59759-0964

October 23, 2022

Policy Number:  OM2768369
24-Hour Claims: 1-800-332-3226
Policy Service:  (406) 287-2900
Online Account Services:  www.safeco.com

**THIS IS NOT A BILL.**

ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT  59759-0884

Thank you for allowing us to continue serving your home insurance needs.   We appreciate your business and the trust that you have placed in us.

This renewal reflects adjustments to your dwelling, other structures, and personal property limits. We have adjusted your dwelling coverage limit to reflect increases in labor and materials costs in your area.   As part of your responsibility to maintain adequate amounts of insurance, please contact your agent to ensure that your limits reflect your dwelling's current features and characteristics, particularly if you have remodeled recently.

Your other structures and personal property limits, which are based on your dwelling coverage, have also been adjusted.   You should review whether your coverage is adequate at least annually, and after each significant personal property purchase.   If you would like to change your limits, or schedule any of your high value items, please contact your agent.

With this renewal the following changes were made, including those requested by you or your agent or broker:

- Your Dwelling Limits (Coverage A) changed from $249,900 to $291,400.   Other coverage limits listed below also changed since they are factors of your dwelling limits.
- Your Other Structure Limits (Coverage B) changed from $347,560 to $405,280.
- Your Personal Property Limits (Coverage C) changed from $347,560 to $405,280.
- Your Additional Living Expense (Coverage D) changed from $49,980 to $58,280.

We would also like to draw your attention to the following:

■ Your new policy period begins December 11, 2022.   The 12-month premium for this policy is $2,051.00 for the December 11, 2022 to December 11, 2023 policy term.

■ This is not a bill.   Your bill will be sent in a separate mailing approximately 25 days before it is due.   It will provide an explanation of any money owed, your payment options with applicable fees and your payment due date.

PLEASE SEE REVERSE
**SAFECO INSURANCE COMPANY OF AMERICA**
P O BOX 704000, SALT LAKE CITY, UT 84170

EXHIBIT A

OC-429/EP 10/13

If you have any questions or wish to make any changes to your policy, you can do so by calling your agent at (406) 287-2900.

We appreciate the opportunity to serve you.   Thank you.

Tyler Asher
President, Safeco Insurance

EXHIBIT A

# Ask yourself: Do you have enough insurance coverage?

**How much would it take to reconstruct your home?**

Surprisingly, it has been estimated that 58% of American homes are underinsured by an average of 21%*. Make sure yours isn't one of them.

Each home is unique. You know your home best. It's your responsibility to make sure you're "fully insured" and "insured to value." That means you need to have enough insurance coverage to rebuild your home and replace all of your personal belongings in the event of total loss.

**How can you determine your needs? Ask yourself the questions below. If you need help answering them, call your agent and discuss your insurance needs with them.**

They will assist you in determining how much insurance would be needed to fully protect your home and belongings.

**How much would it take to reconstruct your home at today's prices?**
Things to consider:
- Your home's age (older homes tend to be more expensive to reconstruct) and style (contemporary, colonial, ranch, etc.)
- Features — fireplaces, cabinetry, built-in features, vaulted ceilings
- Flooring — hardwood, tile, natural stone, carpeting
- Finishes — crown molding, window and floor trim, faux paint, wall paper, wainscoting, chair rails, staircases, etc.
- Recent improvements you may have made (remodeled bathroom or kitchen, recessed lighting, built-in cabinets)
- A basement you may have finished or a room you may have added

**How much is enough to replace the structures surrounding your home at today's prices?**
Things to consider:
- Your fence, detached garage, gazebo, barn or storage shed
- If you have an in-ground swimming pool or just repaved your driveway or sidewalk

**What would it take to replace your personal belongings at today's prices?**
Things to consider:
- All your basics (furniture, rugs, linens, kitchenware, tools) and every electronic gadget
- Your entire wardrobe, your jewelry, medicines and personal effects
- Have you made any big purchases lately?
- If you have a garage full of tools, are passionate about the latest gadgets or collect just about anything, you should seriously consider getting more personal belongings coverage than the standard policy provides.

*Copyright 2008 Marshall & Swift / Boeckh, LLC and its licensors. All rights reserved. Used with permission.

EXHIBIT A



# Let's make sure you're "fully insured."

Your agent uses replacement cost estimation tools to establish a starting point for your insurance coverage. But you know your home best. And we look to you to give your agent the most complete, up-to-date information in order to protect your home and lifestyle. Here are two quick things you can do today:

1.  **Look critically at your coverage statement page (also known as the policy declarations page, which comes after the opening letter in this package).** Do you believe you have enough Coverage A? (This is the amount you'd get for reconstruction of an as-close-as-possible replica of your home in the event of total loss.) If you're not sure, call your agent for help.

2.  **Take inventory.** Compare the value of your personal belongings to the Coverage C amount on your coverage statement page.

**It's important to know: your home's market value is totally different from what it would cost to reconstruct.** Today's market value reflects economic conditions, taxes, school districts, the market value of land and many other factors that have nothing to do with how much it would cost to reconstruct your home from scratch.

Reconstruction cost — the amount needed to get you back home quickly — is based almost exclusively on the cost of materials and labor as well as demand for contractor services. In the event of total loss, a properly insured Safeco policyholder can rebuild with the same quality of materials and workmanship in their current home (unless a functional replacement cost policy was deliberately selected). Of course, we hope you'll never need these services. But we'll all sleep better knowing you're fully insured.

Thank you for trusting Safeco with your home insurance needs.



1463X

EXHIBIT A
Page 2 of 2



# NOTICE OF INFORMATION PRACTICES

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information" or "information") and we value you as a customer.

To learn more about how we collect and use information about you, please read the following notice.

## OUR SOURCES OF INFORMATION ABOUT YOU

Most of the information we obtain comes directly from you and your independent insurance producer. Your application gives us information we need to review your request, such as your name, address and Social Security Number.

We may also ask for information from other outside sources, including:

- Your transactions with our affiliates or other insurance companies (such as your payment history or claims history); and/or,
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record, claims history or verification of the value and condition of your property).

Insurance support organizations from which we obtain information may keep such information and disclose it to others as permitted by law.

If we obtain medical information about you, it is generally received in connection with the administration or management of your insurance policy or claim or for the detection and prevention of fraud. We will not share your medical information with our affiliates or non-affiliates for marketing purposes.

It is our policy to treat information we receive about you in the same confidential way we treat information that you have provided to us on your application. The same confidentiality applies to information about our former customers.

## OUR USE OF INFORMATION ABOUT YOU

We only disclose personal information about you as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. We require these parties to use your personal data only for the reasons we gave it to them. These third parties may include:

- Insurance support organizations, consumer reporting agencies or other insurance companies (including for the detection and prevention of fraud);
- Independent insurance producers authorized to sell Safeco insurance products;
- Independent contractors (such as automobile repair facilities, towing companies, property inspectors and independent claims representatives);
- Auditors, attorneys, courts and government agencies;
- Other companies which may reinsure your policy or with which you have other coverage;
- Group policyholders in connection with reporting claims data or an audit; and/or,
- Other companies and insurance support organizations for actuarial or research studies.

We may also disclose your personal information to other financial institutions with which we have joint marketing agreements for products offered by Safeco and in response to judicial orders such as subpoenas.

We may also share information about our transactions (such as payment history) and experiences (such as claims made) with you within our Safeco family of companies.

We do not sell your personal information to others and we do not provide your information to third parties who are doing business on our behalf for their own marketing purposes.

EXHIBIT A

**PROTECTING YOUR INFORMATION FROM UNAUTHORIZED ACCESS**

We maintain physical, electronic and administrative safeguards to protect your information from unauthorized access. Our employees are authorized to access customer information only for legitimate business purposes.

**INDEPENDENT SAFECO INSURANCE AGENTS**

The independent insurance producers authorized to sell Safeco products are not Safeco employees and are not subject to Safeco's privacy policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco producer to learn more about their privacy practices.

**HOW YOU CAN REVIEW YOUR INFORMATION**

You can request a copy of the information about you in our files to review it for accuracy. You must make your request in writing. Within 30 business days (or as required by law) of receiving your request, we will send you the information. We will advise you of any person or group to whom we have given the information during the last two years. We will also give you the name and address of any reporting organization from which we received information about you.

There are certain types of information, such as information collected when we evaluate a claim or when the possibility of a lawsuit exists, that we are not required to provide you. We obtain medical information about you only in connection with claims and lawsuits. If the law allows you to review such information in our files, we will include it with the other information we send to you.

**IF YOU DISAGREE WITH OUR RECORDS**

If you believe information in our files is wrong, you can notify us in writing. We will review your file within 30 business days of receiving your notice. If we agree with you, we will amend our records and notify you about the change. This change will become part of the file. It will be included in any future disclosures to others and will be sent to:

- Anyone you designate who may have received the information during the previous two years.

- Any person or organization who may have received the information from us during the previous seven years.

- Insurance support organizations that provided the information that was amended or changed pursuant to your request.

If we disagree with you, we will explain why. You can provide us with a written statement explaining why you believe the information is wrong. This statement will become part of the file and will be included in any future disclosures of the disputed subject matter. Your statement will also be sent to the persons listed above.

**SAFECO'S WEB SITE**

If you have Internet access and want to learn more about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

(For mailing address, please contact your agent of the nearest local Safeco office.)

1404K

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

## NOTICE OF IMPORTANT PROVISIONS

The provisions of your policy are described in detail in the enclosed documents. These provisions include important policy definitions, conditions, exclusions, coverage options, and limits. The Policy Declarations provide important details including amounts of coverage and premiums. Together, the policy documents and the Policy Declarations describe the contract between you and the insurance company. A table of contents is also included to help you more easily find information in the policy.

Please read each of these enclosed documents carefully to better understand your policy.

CN-2592/MTEP 4/22






1405    0000072DEBDEV52263921 5405

EXHIBIT A

## Insurance Information and the Use of Credit

Thank you for being a Safeco Insurance customer. We appreciate your business and the trust you have placed with us.

Like most insurance companies, we use credit information as a factor in determining the cost of your insurance. We do so because research studies have shown it to be an accurate predictor of the probability of future insurance losses. Studies also show that a majority of customers benefit from the use of credit information.

It's important to understand that many factors are used to determine the cost of insurance such as driving history for auto insurance, the year your home was built for home insurance, previous insurance and claims history, discounts and coverage limits. Your credit history is also part of the overall calculation that determines your premium. We look at credit history very differently than a financial institution because we're not evaluating your credit-worthiness. We're using credit-based information in combination with other factors to help us properly price insurance risks.

FREQUENTLY ASKED QUESTIONS

Why do you use my credit information?
Insurance companies often use credit information because it is a predictor of the probability of future losses. Its use is an objective way to assess and price potential risk and enables us to more accurately price policies and equitably distribute insurance costs among our policyholders.

Is my credit history the only factor that determines my rate?
No. Many factors such as previous insurance, claims history, discounts and coverage limits go into determining what you pay for your insurance. In addition, the information you provided when you purchased your policy and the verification of that information is used to determine your rate.

How do I know if I'm getting the best possible rate?
One of the benefits of buying insurance through an independent agent is their ability to advise you on your options and ways to save money. Between the guidance of your local independent agent and a vast array of Safeco options, you can be sure you're getting the coverage you want at a competitive rate. If you have any questions, we encourage you to contact your independent Safeco agent and ask for an insurance checkup.

How is credit information used in determining my rate?
Safeco, like most insurance companies, calculates an insurance score based on information from your credit report. Different values or weights are assigned to the information contained in your credit report, such as payment history, amounts owed or the number of applications for new credit lines. The total sum of these weights creates your insurance score. As a result, it is likely that some of your credit information helped to improve your insurance score, and some lowered it. The calculation process and weights used by each insurance company and/or its service providers are proprietary and confidential. As a result, we do not disclose your specific score or the details of how it was calculated.

Did my credit information help or hurt my rate?
Your insurance score is better than most customers who have quoted with us and likely helped qualify you for a better rate. However, you did not receive the lowest possible rate, due in part to your credit information. The reasons for this are explained in this document under "What factors affected my insurance score?"

What can I do to improve my insurance score?
Safeco and independent insurance agents are not credit counselors or financial advisors, so we are not in a position to provide specific advice on how to improve your credit or insurance score. However, we can tell you that the areas that have the biggest impact on your credit report are: payment history, amounts owed, length of credit history, new credit applications and type of credit accounts. To get a copy of your current credit report, contact TransUnion and follow the instructions under "How do I get a copy of my credit report?"

How do I get a copy of my credit report?
The Fair Credit Reporting Act allows you to request a free copy of your credit report within 60 days of receipt of this letter. To get a copy of your report, call TransUnion at 1-800-645-1938 or write to TransUnion Consumer Disclosure Center, PO Box 1000, Chester, PA 19022. TransUnion can give you information about your credit report. However, they did not make any decisions about your insurance premium or how your policy was rated, and they are unable to answer questions about those decisions.

EXHIBIT A

What can I do if I think my credit report is not accurate?
If you believe your report is incomplete or incorrect, you may contact TransUnion to dispute the accuracy or completeness of the information. At your request, they will review your credit information and if corrections are made, they will send you an updated report.

Can I get my policy re-rated if corrections are made to my credit report?
Yes. If you would like us to re-evaluate your policy after your credit report has been corrected, please send us a copy of the documentation from the credit reporting agency indicating the report has been corrected. Include your name, policy number and address, and ask for a credit-based insurance score re-evaluation. Mail your request to: Safeco ATTN: UW Verification & Policy Support, PO Box 704000, Salt Lake City, UT 84170-4000 or fax it to 877-344-5107.

Where can I go to learn more about credit and how it is used in insurance?
To learn more about credit scores visit http://www.myfico.com/CreditEducation/CreditScores.aspx. For more information about how Safeco uses information from your credit report go to http://www.safeco.com/insurancescores.

Who is sending me this notice?
This notice is provided to you by SAFECO INSURANCE COMPANY OF AMERICA        who underwrites your homeowners policy OM2768369.

What factors affected my insurance score?
Below is more information about the factors that affected your insurance score and what you can do to improve them:

CN-7401/EP 8/13

Number of open accounts reported as 'paid as agreed'

*What information is this message derived from?* The score considers the number of open accounts on the consumer's credit file that have been paid as agreed.

*How does this affect my insurance risk score?* Research shows that consumers with multiple active accounts that are paid as agreed have fewer insurance losses.

*What can I do to improve this aspect of my score?* If you only have a few accounts, keeping them active and making payments on time shows that you manage your credit obligations responsibly.

(Reason Code 324)
CN-7300/EP 7/12 _____

Average amount of time accounts have been established

*What information is this message derived from?* The score considers the average age of all of your accounts. Recently opened accounts will lower the average age of your accounts.

*How does this affect my insurance risk score?* Research shows that consumers who have a long established account history have fewer insurance losses.

*What can I do to improve this aspect of my score?* Open new accounts only when necessary. As accounts age this component of your score will likely improve.

(Reason Code 322)
CN-7298/EP 7/12 _____

Number of open and closed accounts reported

*What information is this message derived from?* The score considers the number of open and closed accounts on the consumer's credit file. This considers open and closed accounts reported in the last five (5) years.

*How does this affect my insurance score?* Research shows that consumers who open, or have opened, a large number of accounts experience more insurance losses.

*What can I do to improve this aspect of my score?* Once you have opened an account, regardless of whether you use it, your score will be impacted by this factor. Open new accounts only when needed.

(Reason Code 313)
CN-7291/EP 7/12 _____

EXHIBIT A

*What information is this message derived from?* The score considers the number of months since the most recent inquiry. The score is based on inquiries initiated by you when you are actively seeking to obtain credit, or to obtain higher limits on an existing account. It is not based on inquiries initiated by you to obtain your own insurance score, or inquiries related to obtaining an insurance policy. Inquiries that are not solicited by you, such as account reviews by an existing creditor, or from a promotional mailing are not included in this score. Inquiries as a result of searching for rates on a similar type of loan, such as auto and/or mortgage loans are counted as one inquiry if they occur within 30 days. Only inquiries from the past two (2) years are considered.

*How does this affect my insurance score?* Research shows that consumers who are looking to obtain new credit within a short period of time have more insurance losses.

*What can I do to improve this aspect of my score?* To improve this aspect of your score, apply for credit only when needed.

(Reason Code 319)
CN-7295/EP 7/12 _____

14IBX

EXHIBIT A

**Safeco Insurance**
A Liberty Mutual Company

## SAFECO INSURANCE COMPANY OF AMERICA
Administrative office:  175 Berkeley St., Boston, MA 02116 (A stock insurance company.)

## HOMEOWNERS POLICY DECLARATIONS

**POLICY NUMBER:**
OM2768369

**POLICY PERIOD:  FROM:** DEC. 11, 2022 12:01 A.M.
**TO:** DEC. 11, 2023 12:01 A.M.

**NAMED INSURED AND MAILING ADDRESS:**
ROBERT BOWMAN
BARBARA BOWMAN
PO BOX 884
WHITEHALL MT  59759-0884

**AGENT:**
A INSURANCE AGENCY FOR YOU LLC
PO BOX 964
WHITEHALL       MT  59759-0964

**Valued Homeowners Customer Since: DEC. 11, 2019**

**INSURED LOCATION:**
50 KADDY LN
WHITEHALL MT  59759-9747

**POLICY SERVICE INFORMATION:**
**TELEPHONE:**  (406) 287-2900
**E-MAIL:**   AINSURANCEAGENCYFORYOU@GMAIL.COM
**WEBSITE:** www.safeco.com

### IMPORTANT MESSAGES

- Your policy has renewed effective December 11, 2022.

**LIMITS OF LIABILITY**
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $291,400 | $405,280 | $405,280 | $58,280 | $500,000 | $5,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

|  | AMOUNT |
|---|---|
| Section I - Property Coverages | $  5,000 |

|  | PREMIUM |
|---|---|
| BASIC COVERAGES | $  1,798.00 |
| OTHER COVERAGES, LIMITS AND OPTIONAL COVERAGES | $    270.00 |
| DISCOUNTS AND SURCHARGES | $    -17.00 |

| TOTAL POLICY PREMIUM: | $  2,051.00 |
|---|---|

**Premium Payer:   Insured**

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $6.00 per installment for all other payment methods



**SAFECO INSURANCE COMPANY OF AMERICA**
**HOMEOWNERS POLICY DECLARATIONS**

CONTINUED                    **POLICY NUMBER:**  OM2768369

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   **COVERAGE LEVEL: OPTIMUM**
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY

| | | | | |
|---|---|---|---|---|
| a.Money, pre-paid cards... | $ 1,000 | h.Business Property | | |
| b.Rare coins and currency... | $ 5,000 |    On Premises... | $ | 3,000 |
| c.Securities, debit cards... | $ 5,000 |    Off Premises Sub-limit | $ | 1,000 |
| d.Watercraft... | $ 3,000 | i.Tapes, records, discs... | $ | 500 |
| e.Trailers... | $ 3,000 | j.Theft of rugs... | $ | 10,000 |
| f.Theft of jewelry, watches... | $ 5,000 | k.Grave Markers... | $ | 5,000 |
| g.Theft of silverware... | $ 5,000 | | | |

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | | Limit | Premium |
|---|---|---|---|
| Loss Assessment Coverage | $ | 5,000 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ | 29,140 | Included |
| Refrigerated Spoilage Coverage | | | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ | 10,000 | Included |
| Reasonable Repairs | $ | 5,000 | Included |
| Fire Department Service Charge | $ | 5,000 | Included |
| Land Stabilization | $ | 10,000 | Included |
| Arson Reward | $ | 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ | 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ | 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ | 5,000 | Included |
| Volunteer America | | | Included |
|    Section I (All Perils Coverage) | | | Included |
|    Section II - Liability Coverage | | | Included |
|    Section II - Property Damage | $ | 2,000 | Included |

| OPTIONAL COVERAGES | | Limit | | Premium |
|---|---|---|---|---|
|    Personal Property Replacement Cost | | | | Included |
|    Extended Dwelling Coverage | | Up to 50% | | Included |
|    Escape of Water from Sump (Building/Contents) | $ | 25,000 | $ | 174.00 |
|    Identity Recovery Coverage | $ | 25,000 | $ | 12.00 |
|    Equipment Breakdown Coverage | $ | 50,000 | $ | 24.00 |
|    Water Seepage or Leakage Coverage | $ | 50,000 | $ | 60.00 |

| DISCOUNTS AND SURCHARGES | | Premium |
|---|---|---|
|    Advance Quote Discount | $ | -17.00 |

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

**FORMS APPLICABLE TO THIS POLICY:**

```
HOM-7301/EP 1/09     - PERSONAL PROPERTY REPLACEMENT COST
HOM-7300/EP 1/09     - EXTENDED DWELLING COVERAGE
HOM-7220/EP 1/09     - SAFECO OPTIMUM HOMEOWNERS COVERAGE
HOM-7311/EP 1/09     - ESCAPE OF WATER FROM SUMP/SUMP PUMP DRAIN (BLDG AND CONT)
HOM-7307/EP 1/09     - IDENTITY RECOVERY COVERAGE
HOM-7306/EP 1/09     - EQUIPMENT BREAKDOWN COVERAGE
HOM-7232/EP 1/09     - EXECUTION CLAUSE
HOM-7030/EP R1 1/09  - HOMEOWNERS POLICY
HOM-7100/MTEP R1 7/09 - SPECIAL PROVISIONS - MT
HOM-7332/EP 1/21     - WATER SEEPAGE OR LEAKAGE COVERAGE
```

EXHIBIT A

1407X

# WATER SEEPAGE OR LEAKAGE COVERAGE

For an additional premium, it is agreed that the policy is amended as follows. All of the changes below apply only to the extent coverage is provided by this endorsement.

We cover up to the amount shown in your Policy Declarations for the direct physical loss or damage, including deterioration, *fungi*, wet or dry rot of property described in Coverages A, B, and C caused by accidental, repeated or continuous seepage or leakage of water or steam from within a plumbing, heating, air conditioning system, or from within a household appliance.

We will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. However, such tear out and replacement coverage only applies if the water or steam causes actual damage, including unknown or hidden damage, to a dwelling structure on the **residence premises**.

We do not cover:

1.   loss to the system or appliance from which water or steam escaped; or

2.   any damage you first discover prior to the effective date of this coverage.

For purposes of this coverage, a plumbing system or household appliance does not include a sump, sump pump, or related equipment, or a roof drain, gutter, downspout, exterior drain, or similar fixtures or equipment.

---

**SECTION I — PROPERTY COVERAGES**

**BUILDING PROPERTY LOSSES WE DO NOT COVER**

Item **5.** is deleted.

Item **6.a.** is deleted and replaced by the following:

   **a.**   wear and tear, marring, scratching;

Item **6.c.** is deleted and replaced by the following:

   **c.**   smog or electrolysis;

Item **19.** is deleted and replaced by the following:

**19.  Bacteria** meaning the presence, growth, proliferation, or spread of bacteria.

**ADDITIONAL PROPERTY COVERAGES**

Item **10.** is deleted.

Under **11. Collapse**, the following is added to item **b.**:

   **(7)**   direct physical loss or damage, including deterioration, *fungi*, wet or dry rot caused by accidental, repeated or continuous seepage or leakage of water or steam from within a plumbing, heating, air conditioning system, or from within a household appliance.

---

**SECTION I — PROPERTY CONDITIONS**

The following is added to existing **Section I — Property Conditions**:

1.   **Limit of Liability.** The limit of liability shown in your Policy Declarations for this coverage is an additional amount of insurance and is the most we will pay for the total of all loss or costs under Coverages A, B, C, and D, for any one loss, regardless of the number of locations or number of claims made.

All other provisions of this policy apply.

EXHIBIT A



# SAFECO HOMEOWNERS POLICY

## Table of Contents

| | Beginning On Page |
|---|---|
| INSURING AGREEMENT | 1 |
| SECTION I — PROPERTY COVERAGES | |
| COVERAGE A — DWELLING | 1 |
| COVERAGE B — OTHER STRUCTURES | 1 |
| Building Property We Cover | 1 |
| Building Property We Do Not Cover | 1 |
| Building Property Losses We Cover | 1 |
| Building Property Losses We Do Not Cover | 1 |
| COVERAGE C — PERSONAL PROPERTY | 4 |
| Personal Property We Cover | 4 |
| Personal Property We Do Not Cover | 5 |
| Personal Property Losses We Cover | 6 |
| Personal Property Losses We Do Not Cover | 7 |
| COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT | 7 |
| ADDITIONAL PROPERTY COVERAGES | 8 |
| PROPERTY CONDITIONS | |
| Deductible | 11 |
| Your Duties | 11 |
| Loss Settlement | 12 |
| SECTION II — LIABILITY COVERAGES | |
| COVERAGE E — PERSONAL LIABILITY AND COVERAGE F — MEDICAL PAYMENTS TO OTHERS | |
| Liability Losses We Cover | 14 |
| Liability Losses We Do Not Cover | 14 |
| ADDITIONAL LIABILITY COVERAGES | 18 |
| LIABILITY CONDITIONS | 20 |
| SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS | |
| Policy Period and Changes | 22 |
| Concealment or Fraud | 22 |
| Liberalization Clause | 22 |
| Cancellation | 22 |
| Non-Renewal | 23 |
| Assignment | 23 |
| Our Right to Recover Payment | 23 |
| Death | 23 |
| POLICY DEFINITIONS | 23 |

HOM-7030/EP R1 1/09
G1

EXHIBIT A

1414K

EXHIBIT A

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

2. attached carpeting, built-in appliances, fixtures; and

3. materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

### COVERAGE B — OTHER STRUCTURES

We cover:

1. fences, driveways and walkways; and

2. other structures on the *residence premises*, separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

### BUILDING PROPERTY WE DO NOT COVER

1. Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization.**

2. Other structures:

    a. used in whole or in part for *business;* or

    b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

### BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Building Property We Cover except as limited or excluded.

### BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;

1. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system and appliances of water;

EXHIBIT A

**2.** freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock;

**3.** theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

**4.** vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

**5.** continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

**6.**  **a.**  wear and tear, marring, scratching, deterioration;

   **b.**  inherent defect, mechanical breakdown;

   **c.**  smog, rust or other corrosion, or electrolysis;

   **d.**  smoke from agricultural smudging or industrial operations;

   **e.**  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

   **f.**  birds, vermin, rodents, insects or domestic animals;

   **g.**  pressure from or presence of plant roots.

However, we do insure for any resulting loss from items **1.** through **6.** unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

**7.** **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I — Property Coverages.**

**8.** **Ordinance or Law,** meaning any ordinance or law:

   **a.**  requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

   **b.**  the requirements of which result in a loss in value to property; or

   **c.**  requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.*

   This exclusion applies whether or not the building property has been physically damaged.

**9.** **Earth Movement,** meaning:

   **a.**  the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

   **b.**  erosion, shifting or displacement of materials supporting the foundation; and

   **c.**  volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

   This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

   We do cover direct loss by fire, explosion or theft.

1415X

10. **Water Damage,** meaning:

    **a.**   **(1)**   flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

        **(2)**   release of water held by a dam, levee, dike or by a water or flood control device or structure;

    **b.**   water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.**   water which escapes or overflows from sewers or drains located off the *residence premises;*

    **d.**   water which escapes or overflows from drains or related plumbing appliances on the *residence premises.* However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises,* or obstruction on the *residence premises,* of a drain or plumbing appliance on the *residence premises;* or

    **e.**   water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

11. **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

12. **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

13. Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

    **a.**   undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.**   warlike act by a military force or military personnel; or

    **c.**   destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

14. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

15. **Intentional Loss,** meaning any loss arising out of any act committed:

    **a.**   by or at the direction of any *insured;*

    **b.**   with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

    **c.**   the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

    **d.**   the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause.**

EXHIBIT A

**e.** For purposes of this provision, "domestic abuse" means:

> **(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

> **(2)** sexual assault of one family or household member by another;

> **(3)** stalking of one family or household member by another family or household member; or

> **(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**16. Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**17. Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

**18. Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

**a.** planning, zoning, development, surveying, siting;

**b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** materials used in repair, construction, renovation or remodeling; or

**d.** maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

**19.** *Fungi,* **Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under **Additional Property Coverages —** *Fungi,* **Wet or Dry Rot, or Bacteria** in **Section I — Property Coverages.**

**20. Collapse,** except as provided under **Additional Property Coverages — Collapse** in **Section I — Property Coverages.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

---

## PERSONAL PROPERTY WE COVER

## COVERAGE C — PERSONAL PROPERTY

**1.** Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage C. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

**2.** At your request we cover:

**a.** personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *insured;*

**b.** personal property owned by a guest or a *residence employee,* while the property is at any residence occupied by any *insured.*

**3. SPECIAL LIMITS FOR PERSONAL PROPERTY**

The following groups of personal property are covered only up to the special limit shown on your Policy Declarations page. The special limit is the total amount available for each group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

**a.** Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

EXHIBIT A

141BX

**b.** Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

**c.** Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

**d.** Watercraft, including their trailers, furnishings, equipment and outboard motors.

**e.** Trailers not used with watercraft.

**f.** Theft of jewelry, watches, furs, precious and semiprecious stones.

**g.** Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

**(1)** plateware, flatware, hollowware, tea sets, trays, trophies and the like;

**(2)** other utilitarian items made of or including silver or gold; and

**(3)** all items of pewterware.

**h.** *Business* property, not excluded elsewhere, while located on the *residence premises*. Up to $1,000 of the limit on your Policy Declarations may be used for *business* property, not excluded elsewhere, while located off the *residence premises*.

**i.** Tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises*.

**j.** Theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**k.** Grave markers.

---

## PERSONAL PROPERTY WE DO NOT COVER

**1.** Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.** Animals, birds or fish.

**3.** Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

However, we do cover:

**a.** motorized land vehicles used solely to service the *residence premises* and not subject to motor vehicle registration or licensed for road use;

**b.** vehicles designed for the handicapped and not licensed for road use;

**c.** up to $500 for disassembled parts of a motorized land vehicle while located on the *residence premises;* or

**d.** up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour.

**4.** Electronic apparatus, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

EXHIBIT A

7.  Property of roomers, boarders, tenants and other residents not related to any *insured.*

8.  Property in a location on the *residence premises,* when the location is rented or held for rental to others by any *insured* for more than 31 days in a calendar year. This exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

9.  Property, away from the *residence premises,* rented or held for rental to others.

10. *Business* property or merchandise:

    a.  in storage;

    b.  held as a sample; or

    c.  held for sale or delivery after sale.

11. *Business* documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Coverage C — Personal Property** caused by a peril listed below except as limited or excluded.

1.  **Fire or lightning.**

2.  **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

    a.  continuous walls on all sides extending from ground level to the roof;

    b.  doors and windows in the walls at various locations; and

    c.  a continuous roof sheltering all areas within the wall perimeter.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft,** including self-propelled missiles and spacecraft.

6.  **Vehicles,** meaning impact by, or with, or upset of, a vehicle.

7.  **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations, including slash burns.

8.  **Vandalism or malicious mischief.**

9.  **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a.  committed by any *insured* or by any other person regularly residing on the *insured location;*

    b.  in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

    c.  from that part of a *residence premises* rented by any *insured* to other than an *insured.*

    This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

    Property of a student who is an *insured* is covered while at a residence away from home.

1417X

**EXHIBIT A**

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

    **a.**   to the appliance or system from which the water or steam escaped;

    **b.**   caused by or resulting from freezing except as provided in the peril of freezing below; or

    **c.**   on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the *residence premises* while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired, unless you have used reasonable care to:

    **a.**   maintain heat in the building; or

    **b.**   shut off the water supply and drain the system and appliances of water.

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

---

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

    Payment shall be for the shortest time required, not exceeding 24months, to repair or replace the damage or to permanently relocate.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.



EXHIBIT A

This coverage does not apply to:

**a.** The **residence premises** or that part of the **insured location** that is not rented or leased to a tenant at the time of the loss; or

**b.** to any increase in rent or lease payment that occurs after the time of the loss.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

**3.** If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a cause of loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.**, above for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense** and **Loss of Rent** is stated on your Policy Declarations page and is the most we will pay for all loss or costs under **1.**, **2.** and **3.**, above.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

**1.** **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal coverage is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the **residence premises,** provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2.** **Reasonable Repairs.** We will pay up to the amount stated in your Policy Declarations for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

**3.** **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or Malicious mischief and Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

**4.** **Fire Department Service Charge.** We will pay, up to the amount stated in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

**5.** **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6.** **Land Stabilization.** We will pay up to the amount stated in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

141BX

7. **Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

This coverage does not apply unless you choose to repair or rebuild your property at its present location.

We do not cover:

a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

b. the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.* However, for purposes of **Building Ordinance or Law Coverage,** *pollutants or contaminants* shall not include asbestos or materials containing asbestos.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover,** regardless of the number of locations or number of claims made.

This is an additional amount of insurance.

8. **Arson Reward.** We will pay up to the amount stated in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount stated in your Policy Declarations per event regardless of the number of persons providing information.

9. **Household Products Coverage.** We cover direct physical loss to the property described in Coverages **A** and **B** arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage **A** limit of liability stated in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

a. any fee, assessment or expense of any governmental authority;

b. loss arising out of household products possessed or used:

(1) for *business* purposes;

(2) for illegal purposes;

(3) by contractors; or

(4) on driveways or walkways.

**Pollution or Contamination** under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage,** you may elect either one of these coverages, but not both.

10. *Fungi,* **Wet or Dry Rot, or Bacteria.** We will pay up to the amount stated in your Policy Declarations for:

a. the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

b. the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

EXHIBIT A

**c.** the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

**d.** the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria; and

**e.** **Additional Living Expenses** or **Fair Rental Value** loss covered under **Additional Living Expense And Loss Of Rent.**

This coverage, **10. *Fungi,* Wet or Dry Rot, or Bacteria,** only applies when such loss or costs:

**f.** are a result of a loss we cover that occurs during the policy period;

**g.** are not excluded under **Building Property Losses We Do Not Cover**; and

**h.** only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The limit of liability stated in your Policy Declarations for *Fungi,* **Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages **A, B, C** and **D,** and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

**11.** **Collapse.**

**a.** With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose:

   **(1)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   **(2)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   **(3)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

   **(1)** The perils under Personal Property Losses We Cover;

   **(2)** Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

   **(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

   **(4)** Weight of contents, equipment, animals or people;

   **(5)** Weight of rain which collects on a roof; or

   **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**12.** **Volunteer America**

We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property,** when the loss occurs as a direct result of acting as a *volunteer.* No deductible applies to this coverage.

EXHIBIT A

**13. Criminal Conviction Reward.**

    **a.**    We will pay the amount stated in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

    **b.**    We will pay up to the amount stated in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

        **(1)**    *actual cash value* of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

        **(2)**    the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

    **c.**    This coverage applies subject to the following conditions:

        **(1)**    An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

            **(a)**    an *insured;*

            **(b)**    a relative of an *insured;*

            **(c)**    an employee of a law enforcement agency;

            **(d)**    an employee of a *business* engaged in property protection;

            **(e)**    any person who had custody of the property at the time the theft was committed; or

            **(f)**    any person involved in the crime.

        **(2)**    No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items **a.** and **b.** above is the most we will pay for any one loss to an eligible person.

## SECTION I — PROPERTY CONDITIONS

**1.**    **Deductible.** In case of loss under **Section I — Property Coverages** of this policy, we cover only that part of the loss over the applicable deductible stated in your Policy Declarations.

    The deductible does not apply to **Coverage D — Additional Living Expense And Loss Of Rent** or **Fire Department Service Charge.**

**2.**    **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**3.**    **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    **a.**    cooperate with us in the investigation, settlement or defense of any claim or suit;

    **b.**    give immediate notice to us or our agent;

    **c.**    notify the police in case of loss by theft;

    **d.**    protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    **e.**    prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *replacement cost* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

**f.**   as often as we reasonably require:

    **(1)**   exhibit the damaged and undamaged property;

    **(2)**   provide us with records and documents we request and permit us to make copies; and

    **(3)**   submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse, civil or *domestic partner,* or any other *insured.* You shall not interfere with us examining any other *insured.*

**g.**   submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **(1)**   the time and cause of loss;

    **(2)**   interest of the *insured* and all others in the property involved and all encumbrances on the property;

    **(3)**   other insurance which may cover the loss;

    **(4)**   changes in title or occupancy of the property during the term of the policy;

    **(5)**   specifications of any damaged building and detailed repair estimates;

    **(6)**   an inventory of damaged personal property described in **3.e.;**

    **(7)**   receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent.**

**4.**   **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.**   for more than the amount of the *insured's* interest at the time of loss; or

**b.**   for more than the applicable limit of liability,

whichever is less.

**5.**   **Loss Settlement.** Covered property losses are settled as follows:

**a.**   **Replacement Cost.** Property under Coverage **A** or **B** at *replacement cost,* not including those items listed in **5.b.(2)** and **(3)** below subject to the following:

    **(1)**   We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

        **(a)**   the limit of liability under the policy applying to Coverage **A** or **B**;

        **(b)**   the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

        **(c)**   the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;

        **(d)**   the direct financial loss you incur; or

        **(e)**   our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

    **(2)**   When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

    When more than one layer of finished flooring exists we will pay for the finish of only one layer.

    **(3)**   If the cost to repair or replace is $1,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced.

    **(4)**   You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

        **(a)**   the applicable limit of liability; or

        **(b)**   the direct financial loss you incur; or

   **(c)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a *replacement cost* basis by notifying us of your intent to do so within 180 days after the date of loss.

**b.  Actual Cash Value.**

   **(1)** Personal property covered under Coverage **C**;

   **(2)** Wood fences, outdoor antennae and awnings, all whether attached or not to buildings; and

   **(3)** Structures that are not buildings under Coverage **B**, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

**6.  Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   **a.** repair or replace any part to restore the pair or set to its value before the loss; or

   **b.** pay the difference between *actual cash value* of the pair or set before and after the loss.

**7.  Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost*, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

   **a.** pay its own appraiser; and

   **b.** bear the other expenses of the appraisal and umpire equally.

**8.  Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

**9.  Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10.  Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

   **a.** we reach agreement with you;

   **b.** there is an entry of a final judgment; or

   **c.** there is a filing of an appraisal award with us.

**11.  Abandonment of Property.** We need not accept any property abandoned by any *insured*.

**12.  Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   **a.** notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   **b.** pays any premium due under this policy on demand if you have neglected to pay the premium;

   **c.** submits assigned, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

**d.**  complies with item **3.e.** of **Section I — Property Conditions.**

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

**e.**  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**f.**  at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13.  No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**14.  Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

**a.**  other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

**b.**  a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

**15.  Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16.  Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage.*

---

## SECTION II — LIABILITY COVERAGES

---

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

**1.**  pay up to our limit of liability for the damages for which the *insured* is legally liable; and

**2.**  provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees.* As to others, this coverage applies only:

**1.**  to a person on the *insured location* with the permission of any *insured;* or

**2.**  to a person off the *insured location,* if the *bodily injury:*

**a.**  arises out of a condition on the *insured location* or the ways immediately adjoining;

**b.**  is caused by the activities of any *insured;*

EXHIBIT A

142fX

c.    is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

d.    is caused by an animal owned by or in the care of any *insured.*

---

## LIABILITY LOSSES WE DO NOT COVER

1.    Coverage E — Personal Liability and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage:*

    a.    which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

    This exclusion applies even if:

        (1)    such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

        (2)    such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

    This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

    b.    which results from violation of criminal law committed by, or with the knowledge or consent of any *insured.*

    This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

    c.    arising out of *business* pursuits of any *insured.*

    This exclusion does not apply to:

        (1)    activities which are ordinarily incident to non-*business* pursuits;

        (2)    the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

        (3)    the rental or holding for rental of an *insured location:*

            (a)    on an occasional basis for the exclusive use as a residence;

            (b)    in part, unless intended for use as a residence by more than two roomers or boarders; or

            (c)    in part, as an office, school, studio or private garage;

    d.    arising out of the rendering or failing to render professional services;

    e.    arising out of any premises owned or rented to any *insured* which is not an *insured location;*

    f.    arising out of the ownership, maintenance, use, loading or unloading of:

        (1)    aircraft.

        This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

        (2)    motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *insured.*

        This exclusion does not apply to:

            (a)    a trailer not towed by or carried on a motorized land vehicle;

            (b)    a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

                i.    not owned by any *insured;* or

                ii.    owned by any *insured,* while on an *insured location;*

EXHIBIT A

**(c)** a motorized golf cart which is owned by an *insured,* designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and at the time of an *occurrence* is within the legal boundaries of:

    **i.** a golfing facility and is parked or stored there, or being used by an *insured* to:

        **(i)** play the game of golf or for other recreational or leisure activity allowed by the facility;

        **(ii)** travel to or from an area where motor vehicles or golf carts are parked or stored; or

        **(iii)** cross public roads at designated points to access other parts of the golfing facility; or

    **ii.** a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an *insured's* residence.

**(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *insured location,* which is:

    **i.** not designed for travel on public roads; and

    **ii.** not subject to motor vehicle registration, licensing or permits; or

**(e)** electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

**(f)** a motorized land vehicle in dead storage on an *insured location.*

**(3)** watercraft:

**(a)** owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

**(b)** owned by or rented to any *insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

**(c)** powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *insured.*

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

    **i.** you acquired them prior to the policy inception, and:

        **(i)** declared them at policy inception; or

        **(ii)** you ask us in writing to insure them within 45 days after you become the owner;

    **ii.** you acquire them during the policy period, provided you ask us to insure them:

        **(i)** during the policy period in which you become the owner; or

        **(ii)** within 45 days after you become the owner;

        whichever is greater, and pay any resulting additional premium from the date acquired.

**(d)** designed as an air boat, air cushion, or similar type of craft; or

**(e)** owned by any *insured* which is a *personal watercraft.*

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions **e.** and **f.** do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**g.** arising out of:

**(1)** the entrustment by any *insured* to any person;

1422X

    **(2)**  the supervision by any *insured* of any person;

    **(3)**  any act, decision or omission by any *insured;*

    **(4)**  any liability statutorily imposed on any *insured;* or

    **(5)**  any liability assumed through an unwritten or written agreement by any *insured;*

    with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

**h.**  caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)**  undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)**  warlike act by a military force or military personnel; or

    **(3)**  destruction or seizure or use for a military purpose.

    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**i.**  which results from the legal liability of any *insured* because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

    **(1)**  any insured;

    **(2)**  any employee of any *insured;*

    **(3)**  any other person actually or apparently acting on behalf of any *insured.*

    Regular basis means more than 20 hours per week. This exclusion does not apply to:

    **(1)**  home care services provided to the relatives of any *insured;*

    **(2)**  occasional or part-time home care services provided by any *insured* under 23 years of age.

**j.**  which arises out of the transmission of a communicable disease by any *insured;*

**k.**  arising out of physical or mental abuse, sexual molestation or sexual harassment.

**l.**  arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

    However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**m.**  arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

**2.**  **Coverage E — Personal Liability** does not apply to:

  **a.**  Liability:

    **(1)**  for any assessment charged against you as a member of an association of property owners except as provided under **Additional Liability Coverages — Loss Assessment Coverage** in **Section II — Liability Coverages;**

    **(2)**  under any contract or agreement. However, this does not apply to written contracts:

        **(a)**  that directly relate to the ownership, maintenance or use of an *insured location;* or

        **(b)**  where the liability of others is assumed by the *insured* prior to an *occurrence;*

    unless excluded in **2.a.(1)** above or elsewhere in this policy;

    **(3)**  liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

        **(a)**  known or unknown property or structural defects;

1403  0000072DEBDEV522639357423

EXHIBIT A



**(b)** known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

**(c)** known or unknown soil conditions or drainage problems; or

**(d)** concealment or misrepresentation of any known defects.

**b.** *property damage* to property owned by any *insured;*

**c.** *property damage* to property rented to, occupied or used by or in the care of any *insured.* This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

**d.** *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

**(1)** any workers compensation;

**(2)** non-occupational disability; or

**(3)** occupational disease law;

**e.** *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**f.** *bodily injury* to an *insured* within the meaning of parts **(1)** or **(2)** of **Policy Definitions, 3.g.** *Insured;*

**g.** *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

**(1)** request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants;*

**(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants;*

This exclusion does not apply to *bodily injury* sustained within a building on the *residence premises* and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building.

**h.** liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

**i.** liability arising out of any animal that any *insured* acquires, owns or keeps that:

**(1)** is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

**(2)** has previously inflicted injury upon any person resulting in:

**(a)** maiming, disfigurement, mutilation, impairment, disability or death; or

**(b)** loss of work, schooling, or a loss of ability to carry on with a normal routine;

**(3)** has been trained to fight or attack;

**(4)** has been trained to kill;

**(5)** is a wild canine or feral dog or an offspring from breeding with a wild canine;

**(6)** is illegal to acquire, own or keep;

**(7)** is wild by birth or by nature and the species is not customarily domesticated;

**(8)** is a bird of prey;

**(9)** is venomous; or

**(10)** is a primate.

1423X

Item **(3)** above does not apply in the event the animal is reacting to protect people or property from imminent harm.

This exclusion does not apply to any person or organization described as an *insured* in **Policy Definitions**, item **g.(3)**.

3. **Coverage F — Medical Payments to Others** does not apply to *bodily injury:*

   a. to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured;*

   b. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation; non-occupational disability, or occupational disease law;

   c. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   d. to any person, other than a *residence employee* of any *insured,* regularly residing on any part of the *insured location.*

---

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against any *insured* in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond; and

   c. reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

3. **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

   We will not pay for *property damage:*

   a. if insurance is otherwise provided in this policy;

   b. caused intentionally by any *insured* who is 13 years of age or older;

   c. to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

   d. arising out of:

      (1) *business* pursuits;

      (2) any act or omission in connection with a premises owned, rented or controlled by an *insured,* other than the *insured location;* or

      (3) the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

4. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to the limit shown on your Policy Declarations page for:

   a. the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

   b. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

**c.** loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

**d.** loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured.*

Defense:

**a.** We may make any investigation and settle any claim or suit that we decide is appropriate.

**b.** If a suit is brought against any *insured* for liability covered under this Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5. Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

**a.** the statutorily imposed limit; or

**b.** $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

**6. Loss Assessment.**

**a.** we will pay loss assessments charged during the policy period against you by the association of property owners up to the limit of liability stated in your Policy Declarations, when the assessment is made as a result of:

**(1)** each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

**SPECIAL EXCLUSION:** There is no coverage for any loss assessment resulting from the peril of *earthquake.* However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

**(2)** each *occurrence* to which **Section II — Liability Coverages** of this policy would apply; and

**(3)** liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

**(a)** the director, officer or trustee is elected by the members of the association of property owners; and

**(b)** the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

**b.** **DEDUCTIBLE.** We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from Section I and coverage under this option, only the larger deductible will apply.

**7. Volunteer America.**

**a.** Under **Section II — Liability Coverages,** the following applies:

**(1)** **Property Damage to Others.** We will pay an additional $2,000 for direct damage caused as direct result of acting as a *volunteer.*

**(2)** **Medical Payments to Others.** We will pay up to double the amount stated in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer.*

**b.** Under **Section** II **— Liability Losses We Do Not Cover** the following items are modified as follows:

**(1)** Item **1.c.** does not apply to activities as a **volunteer.**

**(2)** Item **1.d.** does not apply to professional services, other than professional health care services by a doctor, performed as a **volunteer.**

---

## SECTION II — LIABILITY CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not exceed the limit of liability for Coverage E stated in your Policy Declarations. This limit is the same regardless of the number of **insureds,** claims made or persons injured.

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in your Policy Declarations.

**2. Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

**3. Your Duties After Loss.** In case of an accident or **occurrence,** the **insured** shall perform the following duties that apply:

**a.** give written notice to us or our agent as soon as practicable, which sets forth:

**(1)** the identity of the policy and **insured;**

**(2)** reasonably available information on the time, place and circumstances of the accident or **occurrence;**

**(3)** names and addresses of any claimants and witnesses; and

**(4)** in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money** also notify the credit card or fund transfer card company;

**b.** promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

**c.** at our request, help us:

**(1)** to make a settlement;

**(2)** to enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured;**

**(3)** with the conduct of suits and attend hearings and trials;

**(4)** to secure and give evidence and obtain the attendance of witnesses;

**d.** under the **Additional Liability Coverages — Damage to the Property of Others —** submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the **insured's** control;

**e.** submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage,** stating the amount and cause of loss;

**f.** the **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury.**

**4. Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

**a.** give us written proof of claim, under oath if required, as soon as practical;

**b.** authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

- 21 - EXHIBIT A



5. **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

6. **Payment of Interest — Coverage E — Personal Liability.**

   If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by Liability Condition **3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

   a. We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

   b. We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

   c. If we appeal the judgment, we will pay interest on the entire judgment.

   d. Post-judgment interest is in addition to the applicable limit of liability.

   e. Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

7. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage E shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of an *Insured*.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

9. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes.**

   a. The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b. Changes:

      (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

      (2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2. **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

   We may void this policy or deny coverage for a loss or *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

   We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence.* This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

EXHIBIT A

1425X

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

4. **Cancellation.**

   **a.** You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   **b.** We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

   **(1)** When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 15 days before the date cancellation takes effect.

   **c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to **Coverage F— Medical Payments to Others** or **Additional Liability Coverages, Damage to Property of Others.**

8. **Death.** If you die:

   **a.** we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   **b.** *insured* shall include:

   **(1)** any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

   **(2)** with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## POLICY DEFINITIONS

**1.** Throughout this policy, "you" and "your" refer to:

    **a.** the "named insured" shown in your Policy Declarations; and

if a resident of the same household:

    **b.** the spouse;

    **c.** the civil partner by civil union licensed and certified by the state; or

    **d.** the ***domestic partner.***

**2.** "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

**3.** In addition, certain words and phrases are defined as follows:

    **a.** *"Actual cash value"*

        **(1)** When damage to property is economically repairable, ***actual cash value*** shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

        **(2)** When damage to property is not economically repairable or loss prevents repair, ***actual cash value*** shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

        **(3)** Otherwise, ***actual cash value*** shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

        **(4)** ***Actual cash value*** shall not include taxes or any expenses unless incurred following the loss.

    **b.** *"Bodily injury"* means bodily harm, sickness or disease, including required care, loss of services and death resulting there from.

    **c.** *"Business"* means a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

        **(1)** One or more activities, not described in **(2)** below, for which no ***insured*** receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

        **(2)** ***volunteer*** activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

    **d.** *"Domestic partner"* means a person living as a continuing partner with you and:

        **(1)** is at least 18 years of age and competent to contract;

        **(2)** is not a relative; and

        **(3)** shares with you the responsibility for each other's welfare, evidence of which includes:

            **(a)** the sharing in domestic responsibilities for the maintenance of the household; or

            **(b)** having joint financial obligations, resources or assets; or

            **(c)** one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

    ***Domestic partner*** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named ***insured.***

    **e.** *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

    **f.** *"Fungi"* means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of ***fungi,*** including growth, proliferation or spread of ***fungi*** or the

142BX

EXHIBIT A

current or past presence of *fungi.* However, this definition does not include any *fungi* intended by the *insured* for consumption.

**g.** *"Insured"* means:

**(1)**   you; and

**(2)**   so long as you remain a resident of the *residence premises,* the following residents of the *residence premises:*

    **(a)**   your relatives;

    **(b)**   any other person under the age of 24 who is in the care of any person described in **(1)** or **(2)(a)** above.

Anyone described above who is a student temporarily residing away from your *residence premises* while attending school shall be considered a resident of your *residence premises.*

Under **Section II — Liability Coverage,** *"insured"* also means:

**(3)**   with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **g.(2)(a)** or **(b).** A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

**(4)**   with respect to any vehicle to which this policy applies:

    **(a)**   any person while engaged in your employment or the employment of any person included in **g.(2)(a)** or **(b);** or

    **(b)**   any other person using the vehicle on an *insured location* with any *insured's* permission.

**h.**   *"Insured location"* means:

**(1)**   the *residence premises;*

**(2)**   that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

**(3)**   any premises not owned by you which you have the right or privilege to use arising out of **h.1.** or **h.2.** above;

**(4)**   any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

**(5)**   vacant land, including that which is vacant except for a fence, owned by or rented to any *insured* other than farmland;

**(6)**   land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

**(7)**   individual or family cemetery plots or burial vaults of any *insured;* or

**(8)**   any part of a premises occasionally rented to any *insured* for other than *business* purposes.

**i.**   *"Occurrence"* means an accident, including exposure to conditions which results in:

**(1)**   *bodily injury;* or

**(2)**   *property damage;*

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**j.**   *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**k.**   *"Pollutants or contaminants"* means any of the following:

**(1)**   liquid fuels;

**(2)**   lead or any materials containing lead;

1407   0000072DEBDEV5226393357427

EXHIBIT A

**(3)** asbestos or any materials containing asbestos;

**(4)** radon;

**(5)** formaldehyde or any materials containing formaldehyde;

**(6)** electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

**(7)** carbon monoxide;

**(8)** pathogenic or poisonous biological materials;

**(9)** acids, alkalis or chemicals;

**(10)** radioactive substances; or

**(11)** any other irritant or contaminant, including waste, vapor, fumes or odors.

**l.** *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

**m.** *"Replacement cost"*

**(1)** In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

**(2)** In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**n.** *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises*, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

**o.** *"Residence premises"* means:

**(1)** the one, two, three or four family dwelling, used principally as a private residence;

**(2)** other structures and grounds; or

**(3)** that part of any other building;

where you reside and which is shown in your Policy Declarations.

**p.** *"Salvage"* means property having value and included in a covered loss.

**q.** *"Volunteer"* means an *insured* employed by an organization for a charitable purpose or in direct service to the general public or the community.

*Volunteer* service does not include the *insured's* primary employment. *Volunteer* Service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.

1427X

EXHIBIT A

## SAFECO OPTIMUM™ HOMEOWNERS COVERAGE

It is agreed your policy is amended as follows:

**SECTION I — PROPERTY COVERAGES**
**PERSONAL PROPERTY WE DO NOT COVER**

Under **Personal Property We Do Not Cover, 3.,** describing motorized land vehicles and covered exceptions, the following is changed:

For item **3.c.,** describing disassembled parts, the amount is increased to $5,000.

For item **3.d.,** electric motorized ride-on vehicles for children, the amount is increased to $5,000.

The following is added:

    **e.**    Up to $7,500 for golf carts.

---

**SECTION I — PROPERTY COVERAGES**
**ADDITIONAL PROPERTY COVERAGES**

The following item is deleted and replaced by:

**1.**    **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

    We will also pay the reasonable expenses you incur, up to $1,000, for the removal of trees from the **residence premises.** No more than $500 of this limit will be paid for the removal of any one tree.

The following **Additional Property Coverages** are added:

**14.**    **Locks.** We will pay the reasonable expenses you incur to re-key the locks on all entrances to the dwelling or other structure at the **residence premises** if the keys are lost or stolen. No deductible applies to this coverage.

    This coverage includes the cost to replace an automatic garage door transmitter(s), and the cost to change the frequency of the garage door control unit and/or additional transmitters if:

    **a.**    The control unit is on the part of the **residence premises** where you reside; and

    **b.**    It is likely the corresponding transmitters have been lost or stolen.

    This coverage does not apply to a dwelling under construction, renovation or remodeling.

**15.**    **Golf Cart Collision.** We cover accidental direct physical loss to any golf cart to which **Personal Property We Cover** under this policy applies caused by upset or impact with another vehicle or object.

**16.**    **Refrigerated Spoilage.** We will pay up to $500 for any one loss to covered property stored in freezers or refrigerators on the **residence premises** for direct loss caused by:

    **a.**    the interruption of power or other utility service; or

    **b.**    mechanical failure of the unit storing the property.

    Interruption of power or mechanical failure shall not include removal of a plug from an electrical outlet or turning off an electrical switch unless resulting from a loss we cover.

    This coverage is subject to a $100 deductible in place of the deductible shown in the Declarations.

    For purposes of this additional coverage, exclusion **Power Interruption** under **Building Property Losses We Do Not Cover** in your policy does not apply.

**17.**    **Kidnap/Ransom Negotiation Expenses.** We will pay up to $50,000 for ransom negotiation expenses incurred by you as a result of the kidnapping of an **insured.** We will also pay up to $5,000 to any person or organization for information leading to the arrest and conviction of any person(s) who kidnaps an

HOM-7220/EP 1/09



EXHIBIT A
Page 1 of 2

*insured.* This coverage does not apply to the kidnapping of a child by the child's parent. This coverage also does not apply unless:

   **a.**   the kidnapping occurred in the contiguous continental United States, Alaska or Hawaii; and

   **b.**   you have notified the Federal Bureau of Investigation or other law enforcement agency having jurisdiction over the kidnapping, and have complied with their recommendations and instructions.

   **c.**   "**Kidnap/Ransom Negotiation Expenses**" means reasonable fees and expenses of independent negotiators, and reasonable costs of travel, communications and accommodations incurred by you.

       **Kidnap/Ransom Negotiation Expenses** does not include the ransom.

---

**SECTION I — PROPERTY CONDITIONS**

The amount stated in item **5.a.(3)** is increased to $2,500.

Item **6.** is deleted and replaced by the following:

**6.**   **Loss to a Pair or Set.** In case of loss of an item belonging to a pair or set, at your option, we will pay:

   **a.**   to repair or replace any part to restore the pair or set to its value before the loss; or

   **b.**   pay the *replacement cost* of the pair or set. If you elect *replacement cost,* the pair or set becomes our property.

---

**SECTION II — LIABILITY COVERAGES**
**ADDITIONAL LIABILITY COVERAGES**

The following items are changed:

**1.**   **Claim Expenses.** The amount provided in item **c.** is increased to $500.

**3.**   **Damage to Property of Others.** The amount stated for **Damage to Property of Others** is increased to $5,000.

All other provisions of this policy apply.

1428X

**EXHIBIT A**
Page 2 of 2

# SPECIAL PROVISIONS — MONTANA

## SECTION I — PROPERTY CONDITIONS

The following is added to item **5.**:

**d.    Valuation Clause**

When this policy insures real property against loss and the real property is considered to be a total loss, without criminal fault on the part of you or your assignee, the amount of insurance written on such real property shall be taken conclusively to be the true value of the real property insured and the true amount of loss and measure of damages.

The following is added to item **10. Loss Payment:**

If we make a reasonable request for additional information or documents, we shall pay or deny payment for the claim within 60 days of receiving the proof of loss unless we have notified you, your assignee, or the claimant of the reasons for failure to pay for the loss in full or unless we have a reasonable belief that insurance fraud has been committed and we have reported the possible insurance fraud to the commissioner.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item **2. Concealment or Fraud** is deleted and replaced by the following:

**2.    Concealment Or Fraud**

We do not provide coverage to an **insured** who, whether before or after a loss, has:

**a.**    Intentionally concealed or misrepresented any material fact or circumstance;

**b.**    Engaged in fraudulent conduct; or

**c.**    Made false statements;

relating to this insurance.

**Cancellation** Item **4.b.** is deleted and replaced by the following:

**b.**    We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

   **(1)**    When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

   **(2)**    When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 45 days before the date cancellation takes effect.

   **(3)**    When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      **(a)**    If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy;

      **(b)**    If the risk has changed substantially since the policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing this policy;

      **(c)**    In the event of substantial breaches of contractual duties, conditions or warranties;

      **(d)**    Upon a determination by the Insurance Commissioner that continuation of the policy would place us in violation of the Montana Insurance Code;

      **(e)**    Due to our financial impairment; or

      **(f)**    For any other reasons approved by the Insurance Commissioner.

      This can be done by letting you know at least 45 days before the date cancellation takes effect.

EXHIBIT A
Page 1 of 2

(4) When this policy is written for a period of more than one year we may cancel for any reason at the anniversary by letting you know at least 45 days before the date cancellation takes effect.

Item **5. Non-Renewal** is deleted and replaced by the following:

**5.  Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

Notification or nonrenewal to your insurance producer via electronic transfer of data or by electronic data retrieval device meets the requirements of a mailed or delivered copy.

The following conditions are added:

**9.  Conformity With Montana Statutes**

The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the "insured" resides on or after the effective date of this policy. Any provision of this policy (including endorsements which modify the policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to that statute.

**10.  Renewal With Altered Terms**

If we offer or purport to renew a policy on less favorable terms, at a higher rate, or at a higher rating plan, the new terms, rate, or rating plan will take effect on the policy renewal date only if we have mailed or delivered notice of the new terms, rate, or rating plan to you at least 45 days before the expiration date.

All other provisions of this policy apply.

142BX

EXHIBIT A

Page 2 of 2

## PERSONAL PROPERTY REPLACEMENT COST

**1.    PROPERTY COVERED**

For an additional premium, we cover:

**a.**    personal property under Coverage C; and

**b.**    awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings

at *replacement cost* at the time of loss.

**2.    PROPERTY NOT COVERED**

The following property is not eligible for *replacement cost* settlement. Any loss shall be settled at *actual cash value* at the time of loss but not exceeding the amount necessary to repair or replace:

**a.**    antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

**b.**    memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

**c.**    personal property not maintained in good or workable condition;

**d.**    personal property that is outdated or obsolete and is stored or not being used;

**e.**    property not owned by any *insured;* and

**f.**    motorized land vehicles or earth moving or excavating equipment used to service the *residence premises.*

**3.    CONDITIONS**

**a.**    We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

(1)    the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

(2)    the *replacement cost* of the property or any part;

(3)    the full amount actually and necessarily incurred by the *insured* in repairing or replacing the property or any part;

(4)    the direct financial loss you incur; or

(5)    our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**b.**    We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

**c.**    You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

All other provisions of this policy apply.

HOM-7301/EP 1/09

EXHIBIT A

# EXTENDED DWELLING COVERAGE

For an additional premium, we will settle covered losses to the dwelling described in Coverage A up to the additional limit of liability shown in the Policy Declarations for **Extended Dwelling Coverage** provided you:

1. insure the dwelling to 100% of its *replacement cost* as agreed by us;

2. accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;

3. notify us of any addition or other remodeling which increases the *replacement cost* of the dwelling $5,000 or more within 180 days of the start of construction; and

4. repair or replace the damaged dwelling.

If you fail to comply with any of the above provisions, the limit of liability shown in the Policy Declarations for Coverage A shall apply.

From time to time we may make requests of you for updated dwelling information. If you fail to provide the information, or if we disagree on *replacement cost,* we may delete **Extended Dwelling Coverage** effective at policy renewal.

All other provisions of this policy apply.

HOM-7300/EP 1/09


EXHIBIT A

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR
## DRAIN ON THE RESIDENCE PREMISES (BUILDING AND CONTENTS)

1.  To the extent coverage is provided by this **EXTENSION OF COVERAGE** and up to the **LIMIT OF LIABILITY** described below, **Section I — Building Property Losses We Do Not Cover, Water Damage, 10.d.** and **10.e.** do not apply (items **3.d.** and **3.e.** under **Section I — Personal Property Losses We Do Not Cover** for HOM-7040/EP, Renters Policy).

2.  **EXTENSION OF COVERAGE**

    For an additional premium, we cover accidental direct physical loss to property covered under **Section I — Property Coverages** caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the ***residence premises***.

    For purposes of coverage under this **EXTENSION OF COVERAGE,** a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

3.  **EXCLUSION**

    **THIS IS NOT FLOOD INSURANCE.**

    There shall be no coverage under this **EXTENSION OF COVERAGE** if water excluded under **Section I — Building Property Losses We Do Not Cover, Water Damage, 10.a., 10.b.** or **10.c.** (items **3.a., 3.b.** or **3.c.** under **Section I — Personal Property Losses We Do Not Cover** for HOM-7040/EP, Renters Policy):

    a.  is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this **EXTENSION OF COVERAGE,** and

    b.  damages property covered under **Section I — Property Coverages** other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well, or a drain or related plumbing appliance located on the ***residence premises***.

4.  **LIMIT OF LIABILITY**

    Our limit of liability for this **EXTENSION OF COVERAGE** shall be up to the amount shown in the Declarations for this **EXTENSION OF COVERAGE.**

5.  **DEDUCTIBLE**

    We will pay only that part of the loss that exceeds the applicable deductible shown in the Policy Declarations.

    All other provisions of this policy apply.

HOM-7311/EP 1/09

EXHIBIT A

# IDENTITY RECOVERY COVERAGE

**ID THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT**

Service and coverage under this endorsement applies to any *insured* as defined in this policy.

**DEFINITIONS**

The following definitions are added with respect to this endorsement only:

1.  *"ID Recovery Case Manager"* means a person assigned by us to help an *insured* to recover control over his or her personal identity (ID). This help may include contacting authorities, credit bureaus, creditors and businesses. Such contacts will take place with the permission and cooperation of the *insured*.

2.  *"ID Theft"* means the fraudulent use of the Social Security number or other method of identifying an *insured*. This includes the fraudulent use of the personal identity of an insured to establish credit accounts, secure loans, enter into contracts or commit crimes.

    *ID theft* does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

    *ID theft* does not include the unauthorized use of a valid credit card, credit account or bank account. However, *ID theft* does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3.  *"ID Theft Expenses"* means any of the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an ID theft.

    a.  Costs for re-filing applications for loans, grants or other credit instruments.

    b.  Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage.

    c.  Costs for up to 12 credit reports from established credit bureaus dated within 12 months after discovery of the *ID theft.*

    d.  Fees and expenses for an attorney approved by us for the following.

        (1)  The defense of any civil suit brought against an *insured* by a creditor or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan.

        (2)  The removal of any civil judgment wrongfully entered against an *insured.*

    e.  Actual lost wages of the *insured* for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

    f.  Actual costs for supervision of children or elderly or infirm relatives or dependants of the *insured* during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the *insured.*

The following Additional Coverage is added under **Section I:**

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met.

1.  There has been an *ID theft* involving the personal identity of an *insured* under this policy; and

2.  Such *ID theft* is first discovered by the *insured* during the policy period for which this Identity Recovery coverage is applicable; and

3.  Such ID *theft* is reported to us within 60 days after it is first discovered by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HOM-7307/EP 1/09

EXHIBIT A

Page 1 of 3

If all three of the requirements listed above have been met, then we will provide the following to the *insured:*

1. **Case Management Service**

   Services of an *ID recovery case manager* as needed to respond to the *ID theft.*

2. **Expense Reimbursement**

   Reimbursement of necessary and reasonable *ID theft expenses* incurred as a direct result of the *ID theft.*

This coverage is additional insurance.

**LIMITS**

Case Management Service is available as needed for any one *ID theft* for up to 12 months in a row from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per *insured.* This limit is the most we will pay for the total of all loss or expense arising out of all *ID thefts* to any one *insured* which are first discovered by the *insured* during the present annual policy period. This limit applies regardless of the number of claims during that period.

An *ID theft* may be first discovered by the *insured* in one policy period and continue into other policy periods. If so, all loss and expense arising from such *ID theft* will be subject to the aggregate limit applicable to the policy period when the *ID theft* was first discovered by the *insured.*

Coverage for legal costs is found under item **d.** of the definition of *ID theft* expenses. Such legal costs are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item **e.** Lost Wages and item **f.** Child and Elder Care Expenses of the definition of *ID theft expenses* are jointly subject to a sub-limit of $250 per day, not to exceed $5,000 in total. This sub-limit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the *ID theft* by the *insured.*

**DEDUCTIBLE**

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible as shown on your Declarations page. You shall be responsible for only one deductible under this endorsement during any one policy period.

**EXCLUSIONS**

The following additional exclusions apply to this coverage. These exclusions apply to both Case Management Service and Expense Reimbursement.

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an *insured.* This includes any such act by a person aiding or abetting an *insured.* This also includes any such act by an authorized representative of an *insured.* In all these cases, it does not matter whether the individual is acting alone or in collusion with others.

3. Loss other than *ID theft expenses.* Account balances which arise out of fraudulent charges would be one example of loss other than *ID theft expenses.*

4. An *ID theft* first discovered by the *insured* prior to or after the period for which this coverage applies. This exclusion applies whether or not such *ID theft* began or continued during the period of coverage.

5. An *ID theft* that is not reported to us within 60 days after it is first discovered by the *insured.*

6. An *ID theft* that is not reported in writing to the police.

1433X

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HOM-7307/EP 1/09

EXHIBIT A
Page 2 of 3

**CONDITIONS**

The following additional Conditions apply to this coverage.

**A.  Assistance and Claims**

If you have questions or need help, please call the **ID Recovery Help Line** at **1 (800) 631-9073.**

The **ID Recovery Help Line** is available to provide you with the following.

**1.**  Information on how to respond to a possible *ID theft.*

**2.**  Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an *insured* prior to a determination that a covered *identity theft* has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered *identity theft* has not occurred.

As respects Expense Reimbursement Coverage, you must send to us receipts, bills or other records that support your claim for *ID theft expenses.* Such records must be sent to us within 60 days after our request.

**B.  Computer Security**

Each *insured* has the responsibility to use and maintain security for his or her computer system. This includes the use of personal firewalls and anti-virus software. This also includes the proper disposal of used hard drives.

**C.  Services**

The following conditions apply as respects any services provided by us or our designees to you or any *insured* under this endorsement.

**1.**  Our ability to provide helpful services in the event of an *ID theft* depends on your cooperation, permission and assistance.

**2.**  All services may not be available or applicable to all individuals. For example, *insureds* who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**3.**  We do not warrant that our services will end or solve all problems associated with an *ID theft.* We do not warrant that our services will prevent future *ID thefts.*

All other provisions of this policy apply.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT A
Page 3 of 3

## EQUIPMENT BREAKDOWN COVERAGE

### PROPERTY WE COVER

For an additional premium we cover up to the amount stated in your policy declarations for accidental direct physical loss to your covered property located on the *residence premises* caused by equipment *breakdown* as described in this endorsement.

### BUILDING PROPERTY WE COVER

We cover *equipment breakdown.* To the extent *equipment breakdown* coverage is provided under this endorsement, "mechanical breakdown" named in **Building Property Losses We Do Not Cover, 6.b.,** does not apply.

### PERSONAL PROPERTY WE COVER

*Equipment breakdown* is added to **Personal Property Losses We Cover**

### EQUIPMENT BREAKDOWN ADDITIONAL COVERAGES

The following *Equipment Breakdown* coverages are added:

1. **Expediting Expense**

   We will pay up to $3,000 per occurrence for the extra costs to expedite repair or replacement to covered property for loss due to an *equipment breakdown,* meaning:

   The reasonable extra cost of temporary repair and of expediting the repair or replacement of damaged equipment, including overtime and the extra cost of express or other rapid means of transportation.

2. **Spoilage Coverage**

   We will pay up to $3,000 per occurrence for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an *equipment breakdown* to covered property.

3. **Cleanup and Removal of *Pollutants or Contaminants***

   We will pay up to $3,000 per occurrence for the necessary clean up and removal of *pollutants or contaminants* resulting from an *equipment breakdown.*

   The limit of liability for each additional coverage described in **1.** through **3.,** above, shall not increase the limit of liability shown in the policy declarations for this endorsement.

### EQUIPMENT BREAKDOWN CONDITIONS

The following Loss Settlement Conditions shall apply to covered loss caused by *equipment breakdown:*

1. **Deductible** We cover only that part of the loss that exceeds $500. In the event that more than one deductible may be applied to a loss that includes *equipment breakdown* the single highest deductible shall be applied.

   You may, however, elect a separate loss settlement for *equipment breakdown,* separate from any other loss covered under the policy, subject to a $500 deductible.

2. **Loss Settlement**

   a. We will pay the amount actually and necessarily incurred to repair or replace covered property damaged by an *equipment breakdown.* Our payment will be the lesser of:

      (1) The cost at the time of the *equipment breakdown* to repair the damaged covered property;

      (2) The cost at the time of the *equipment breakdown* to replace the covered property with property of like kind, capacity, size and quality; or

      (3) The amount you actually spend that is necessary to repair or replace the damaged property.

   b. Repair parts or replacement covered property must be:

      (1) of like kind, capacity, size and quality; and

      (2) used for the same purpose.

   c. If the cost of repairing or replacing only a part of the covered property is greater than:

      (1) The cost of repairing the covered Property; or



EXHIBIT A
Page 1 of 2

   (2)   The cost of replacing the entire Covered Property on the same site.

   We will pay the lesser of (1) or (2).

**d.**   *Equipment Breakdown* coverage does not extend beyond the ***Residence Premises.***

**e.**   **ENERGY STAR Improvements — *Using Less Energy, Saving Money and Helping to Protect our Environment***

   If Covered Property requires replacement due to an ***equipment breakdown,*** we will pay the additional cost to replace non ENERGY STAR rated equipment with equipment that is an ENERGY STAR Qualified Product as stated within www.energystar.gov.

   However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable coverage limits or apply to any Actual Cash Value loss settlement.

   ENERGY STAR is a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy whose objective it is to help you save money and protect the environment through energy efficient products and practices.

**DEFINITIONS**

The following definition is added with respect to this endorsement only:

***Equipment breakdown*** means:

**1.**   Accidental physical loss or damage originating within:

   **a.**   Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

      **(1)**   waste disposal piping;

      **(2)**   any piping forming part of a fire protective system; and

      **(3)**   any water piping other than:

         **(a)**   boiler feed water piping between the feed pump and the boiler;

         **(b)**   boiler condensate return piping; or

         **(c)**   water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

   **b.**   all mechanical, electrical, electronic or fiber optic equipment;

**2.**   caused by, resulting from, or consisting of:

   **a.**   mechanical breakdown;

   **b.**   electrical or electronic breakdown; or

   **c.**   rupture, bursting, bulging, implosion, or steam explosion.

**3.**   However, *Equipment breakdown* shall not mean loss, damage, cost or expense directly caused by, contributed to, resulting from or arising out of the following causes of loss:

   **a.**   Losses excluded under the policy to which this endorsement is attached; or

   **b.**   Perils insured against under Personal Property Losses We Cover of the policy to which this endorsement is attached; or

   **c.**   any sinkhole collapse, volcanic action, earth movement, leakage from fire extinguishing equipment, water, or flood.

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

HOM-7232/EP 1/09
G5

EXHIBIT A

Bradley R. Jones
DOUBEK, PYFER & STORRAR
PO Box 236
Helena MT 59624
Telephone: (406) 442-7830
Facsimile: (406) 442-7839
bradley@lawyerinmontana.com



FILED

APR 1 2 2023

By Tom Powers, Clerk
_____
Deputy Clerk

*Attorneys for Plaintiff*

---

MONTANA SECOND JUDICIAL DISTRICT COURT, SILVER BOW COUNTY

| | |
|---|---|
| JOSH HENDERSON,<br><br>          Plaintiff,<br><br>    v.<br><br>SILVER BOW PIZZA and TAYLOR BOWMAN,<br><br>          Defendants. | Cause No. DV. 23-106<br><br>COMPLAINT AND DEMAND<br>FOR JURY TRIAL<br><br>ROBERT J WHELAN<br>JUDGE DEPT. II |

Plaintiff files this Complaint and Demand for Jury Trial and alleges the following:

## FACTS

1.      All acts and omissions occurred in Butte, Silver Bow County, State of Montana.

2.      On or about February 17, 2023, Plaintiff was eating dinner with friends at Silver Bow Pizza, a restaurant/bar located at 3500 Harrison Ave. in Butte.

3.      Defendant Taylor Bowman was also in Silver Bow drinking at the bar and visibly intoxicated. Upon information and belief, Bowman was so intoxicated that wait/bar staff discussed either among themselves or with other patrons that Bowman should be "cut off" from the bar selling him alcohol just before the assault.

4.      Upon information and belief, Bowman's sister approached Plaintiff's dinner guests agitated and acting verbally aggressive.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1
EXHIBIT B

5.      Without warning, Bowman lunged towards Plaintiff, and began to beat him, then drag him, breaking his ankle in the process and punching his face/neck.

6.      Eventually, other restaurant patrons pulled Defendant Bowman off of Plaintiff to end the beating, and, Bowman was forced to the door.  After exiting the building, he continued to shout threats at Plaintiff from at or near the doorway before eventually being convinced to leave.

7.      Plaintiff suffered severe injury as a result of the assault and had to seek emergency medical care.   He has suffered, among other damages, a broken ankle which a surgeon has attempted to repair with metal screws and plates.

8.      Defendant Bowman was subsequently criminally charged with felony aggravated assault.

## COUNT I:  NEGLIGENCE(AGAINST BOWMAN)

Plaintiff re-alleges the allegations set forth above in this Complaint as if set forth in full here.

9.      Defendant Bowman had a duty to abstain from excessive alcohol consumption that would affect his judgment and a duty to abstain from physically assaulting and injuring other restaurant patrons.

10.      Bowman's behavior indicated that his intoxication caused him to commit the assault.

11.      Defendant Bowman breached his duty by drunkenly assaulting Plaintiff.

12.      As a direct and proximate result of Bowman's breach of duty, Plaintiff was injured and suffered damage.

## COUNT II:  NEGLIGENCE (AGAINST SILVER BOW PIZZA)

Plaintiff re-alleges the allegations set forth above in this Complaint as if set forth in full here.

13.         Defendant Silver Bow Pizza had a duty to keep its restaurant premises safe for patrons.  Included among these duties are: generally ensuring the peace of the restaurant, i.e protecting all patrons, providing adequate staff to safely police their premises; not tolerating disorderly conditions; not serving a patron whom Silver Bow had received warning is obstreperous and presented a particular danger of harm to another; and not over-serving alcohol to patrons.

14.         Defendant Silver Bow Pizza breached its duty to Plaintiff by knowingly or negligently over-serving alcohol to Defendant Bowman and allowing unsafe conditions on the premises for the assault to happen.  Silver Bow knew or should have known that Bowman's behavior and general physical demeanor prior to the incident was indicative of intoxication. Silver Bow knew or should have known that Bowman was obstreperous, disorderly, dangerous to others, prone to violence, and drunk and generally unsafe to allow on the premises.   Silver Bow did not have adequate staff to keep its patrons safe and failed to timely stop Bowman's assault on Plaintiff.

15.          As a direct and proximate result of Silver Bow's breach of its duties, Plaintiff was injured and suffered damages.

**COUNT III:  VIOLATION OF MCA § 27-1-710 (AGAINST SILVER BOW)**

Plaintiff re-alleges the allegations set forth above in this Complaint as if set forth in full here.

16.         Pursuant to MCA § 27-1-710(3)(b), Silver Bow Pizza had a duty to not serve alcohol to a visibly intoxicated person, including Bowman on the night of February 17, 2023.

3

EXHIBIT B

17.        Upon information and belief, Defendant Silver Bow Pizza knew or should have known that Defendant Bowman was physically agitated and exhibiting visible signs of alcohol intoxication prior to assaulting Plaintiff.

18.        Silver Bow Pizza breached its duty imposed by § 27-1-710(3)(b), MCA by serving Bowman.

19.        As a direct and proximate result of Silver Bow's breach, Bowman assaulted and injured Plaintiff.

## COUNT IV: ASSAULT (AGAINST BOWMAN)

Plaintiff re-alleges the allegations set forth above in this Complaint as if set forth in full here.

20.        Defendant Bowman had a duty to abstain from drunkenly assaulting Plaintiff.

21.        Bowman breached that duty when he, unprovoked, began to savagely beat Plaintiff. Bowman's aggression put Plaintiff in reasonable apprehension of imminent harmful and offensive contact and did in fact cause such harmful and offensive contact to Plaintiff.

22.        As a direct and proximate result of Bowman's assault, Plaintiff was injured and suffered damage.

## COUNT V: BATTERY (AGAINST BOWMAN)

Plaintiff re-alleges the allegations set forth above in this Complaint as if set forth in full here.

23.        Defendant Bowman had a duty to abstain from drunken harmful or offensive touching of Plaintiff.

24.        Bowman breached that duty when he pulled Plaintiff from his table in the Silver Bow Pizza restaurant, and, unprovoked, began to savagely beat Plaintiff.

25.     Plaintiff's harmful and offensive touching (beating) of Plaintiff was a direct and proximate cause of Plaintiff's injuries.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by a jury of his peers.

WHEREFORE, Plaintiff request the Court enter judgment against Defendants for all reasonable and general and compensatory damages caused by their negligence and negligence *per se*, to be determined by a jury, and for all other relief deemed just and proper by the Court.

DATED this 10th day of April, 2023.

DOUBEK, PYFER & STORRAR

By _____
Bradley R. Jones
Attorney for Plaintiff

MONTANA SECOND JUDICIAL DISTRICT COURT
SILVER BOW COUNTY

------------------------------------------------------------
STATE OF MONTANA,

                    Plaintiff,

vs.                                    CAUSE NO. DC 23-105

TAYLOR JAMES BOWMAN,

                    Defendant.
------------------------------------------------------------


CHANGE OF PLEA AND SENTENCING HEARING




Heard before the Honorable Robert Whelan
Silver Bow County Courthouse
155 West Granite
Butte, Montana


October 18, 2023




REPORTED BY:   CHERYL ROMSA, PRO TEM REPORTER
CHERYL ROMSA COURT REPORTING
1 NORTH LAST CHANCE GULCH, SUITE 1
P. O. BOX 1278
HELENA, MONTANA  59624
(406) 449-6380

EXHIBIT C

A P P E A R A N C E S


ON BEHALF OF PLAINTIFF:


    AARON RAINS
    Deputy County Attorney
    155 West Granite Street, Room 104
    Butte, Montana  59701


ON BEHALF OF DEFENDANT:


    JILL GANNON-NAGLE
    Attorney at Law
    P. O. Box 283
    Dillon, Montana  59725

EXHIBIT C

I N D E X

PAGE

Change of plea.................................    4

Recommendation of the State by Mr. Rains.........    8

Recommendation of Defense by Ms. Gannon-Nagle....    9

Discussion of deferring imposition of sentence...   11

Statement read by the Defendant..................   13

Pronouncement of sentence........................   14

Court Reporter's Certificate.....................   16

EXHIBIT C

1          WHEREUPON, the proceedings were had as follows:

2          THE COURT:  The next matter is DC 23-105, State

3    vs. Bowman.  In this matter, Aaron Rains represents the

4    State and Jill Nagle represents the Defendant.  The

5    Defendant is present in the courtroom.  This is the time

6    set -- or it was for a pretrial, but it looks like there's

7    been a pretrial agreement.

8          MS. GANNON-NAGLE:  That's right, Judge.  We're

9    ready to do a change of plea and sentencing today, if the

10   Court will oblige.

11         THE COURT:  Okay.  Ms. Nagle, it appears that on

12   page 5, that contains your signature and that of your

13   client; is that correct?

14         THE DEFENDANT:  Yes, Your Honor.

15         MS. GANNON-NAGLE:  That's correct, Judge.

16         THE COURT:  And Ms. Nagle, you've reviewed the

17   pretrial agreement with your client?

18         MS. GANNON-NAGLE:  Yes, Your Honor.

19         THE COURT:  Based on those discussions, do you

20   believe your client is competent to enter a plea here

21   today?

22         MS. GANNON-NAGLE:  Yes, Your Honor.

23         THE COURT:  With the exception of what's

24   contained in the pretrial agreement, has the State made

25   any other promises or have they in any way tried to coerce

EXHIBIT C

1    your client into changing his plea here today?

2            MS. GANNON-NAGLE:  No, Your Honor.

3            THE COURT:  Mr. Bowman, would you please state

4    your full name for the record?

5            THE DEFENDANT:  It's Taylor James Bowman.

6            THE COURT:  And Mr. Bowman, are you under the

7    influence of any medication, drugs, or alcohol at this

8    time?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Are you suffering from any emotional,

11   physical, or mental disabilities at this time?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  You've previously entered a not

14   guilty plea, and, therefore, all of your trial rights are

15   currently still in place.  I know there was an amended

16   information filed amending this matter to a misdemeanor

17   assault.  You understand that the maximum penalty with

18   regards to that would be a term in the Silver Bow

19   Detention Center not to exceed six months and a fine not

20   to exceed $500 or both?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And you understand this pretrial

23   agreement is an agreement between you and the State, and

24   you and the State are bound by it?

25           THE DEFENDANT:  Yes, Your Honor.

EXHIBIT C

1          THE COURT:  Do you understand that if I decide

2     not to follow this agreement, I could sentence you up to

3     those maximums?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  And if you decide to change

6     your plea here today, you're giving up all of your rights:

7     The right to remain silent; the right against

8     self-incrimination; the right to require that prosecution

9     prove their case beyond a reasonable doubt; the right to a

10    fair, speedy, and public trial; the right to confront and

11    cross-examine witnesses; the right to present evidence on

12    your own behalf; the chance to be found guilty of a lesser

13    offense; the right to challenge factual findings about

14    your guilt; and the right to appeal any guilty verdict of

15    the jury.  Do you understand you're waiving those rights?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  You maintain the right to be

18    represented by counsel, and you and your counsel can make

19    recommendations with regards to sentencing.

20       With regards to your counsel, are you satisfied with

21    the representation you've received?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right.  In that case, Mr. Bowman,

24    with regards to the amended charge of assault, a

25    misdemeanor, how do you plead?

EXHIBIT C

7

1          THE DEFENDANT:  Guilty.

2          THE COURT:  And at this time, I'm going to ask

3    that you state the acts you committed which make up the

4    elements of this offense, and I am going to allow

5    Ms. Nagle to question you in that regard.

6          MS. GANNON-NAGLE:  Thank you, Your Honor.

7       So Mr. Bowman, on or about February 17th, 2023, at

8    Harrison Avenue in the city of Butte, county of

9    Silver Bow, state of Montana, do you agree that you

10   purposely or knowingly used physical force or conduct,

11   causing the bodily injury of another?

12         THE DEFENDANT:  Yes, ma'am.

13         MS. GANNON-NAGLE:  Specifically, did you punch

14   J.H. in the face and also take J.H. to the ground by

15   jumping on his back, which resulted in a fracture of his

16   lower leg?

17         THE DEFENDANT:  Yes, ma'am.

18         MS. GANNON-NAGLE:  Thank you.

19         THE COURT:  Is the State satisfied?

20         MR. RAINS:  Yes, Your Honor.

21         THE COURT:  Based upon the factual contract of

22   the plea agreement and based upon the Defendant's

23   responses to the questions here today, the Court finds:

24   The Defendant is acting under the advice of competent

25   counsel.  The Defendant understands his rights, the charge

EXHIBIT C

1    against him, and the possible punishment.  The Defendant

2    is not under the influence of drugs or alcohol.  The

3    Defendant is not suffering from any emotional or mental

4    disabilities at this time.  No promises or threats have

5    been made to the Defendant to cause him to change his plea

6    to guilty.  The Defendant is competent to aid in his

7    defense.  The Defendant has admitted the factual elements

8    of the crime.  The Defendant's plea is entered

9    voluntarily, knowingly, and intelligently.

10        The Court accepts the Defendant's guilty plea.  The

11   Defendant is guilty of assault, a misdemeanor.

12        Do the parties wish to proceed to sentencing at this

13   time?

14            MS. GANNON-NAGLE:  Yes, Your Honor.

15            MR. RAINS:  Yes, Your Honor.

16            THE COURT:  Are there any witnesses in this

17   matter?

18            MR. RAINS:  None from the State, Your Honor.

19            MS. GANNON-NAGLE:  None from the Defense.

20            THE COURT:  Mr. Rains, what is the State's

21   recommendation?

22            MR. RAINS:  Your Honor, the State would recommend

23   that the Court follow the pretrial agreement as written

24   and sentence the Defendant to six months in the Silver Bow

25   County Detention Center.  We would also request that he be

EXHIBIT C

1   sentenced -- or ordered, rather, to pay restitution in the

2   amount of $4,634.25.

3        The Court would -- or, I'm sorry, the State would

4   recommend that the Court defer the six months of

5   incarceration for a period of two years and order that

6   Mr. Bowman be on misdemeanor probation for the duration of

7   that two years or until his financial obligations have

8   been satisfied.

9        The State would also request surcharges in the amount

10  of $75.  We would not be requesting a fine in light of the

11  restitution.

12       This recommendation is made based on the Defendant's

13  age -- I believe he just turned 24 -- his lack, complete

14  lack of criminal history, and discussions with the victim

15  in this matter.

16            THE COURT:  So the victim was in agreement with

17  this?

18            MR. RAINS:  Yes.

19            THE COURT:  Okay.  Ms. Nagle.

20            MS. GANNON-NAGLE:  Thank you, Your Honor.  We

21  would ask the Court to follow the recommendation.  This

22  incident stemmed from what I would describe as a

23  continual, ongoing issue between two families as a result

24  of an incident that occurred in a separate county.

25  Mr. Bowman unfortunately made the very poor decision to

EXHIBIT C

1  involve himself in that, and that's how this interaction

2  occurred.

3      Mr. Bowman's intention was certainly not to break the

4  leg of this man.  I think that we all agree on that based

5  on the evidence that we have.  The photos and the videos

6  show that this was -- that certainly was not his

7  intention, but it is definitely the result of his actions.

8  And now he has to live with that.

9      Mr. Bowman is typically an extremely responsible young

10  man.  He has no criminal history.  He works full time.

11  He's very respectful.  This is pretty out of character for

12  him, I would say, and I think he's learned a very valuable

13  lesson.  Facing the potential arrest on this offense and

14  then the felony offense before the Court that he faced was

15  extremely difficult and scary for Mr. Bowman, and I think

16  he's learned to keep himself where he needs to be and not

17  involve himself in other people's problems.

18      The two-year deferred sentence is appropriate under

19  the statute.  It's appropriate based on the restitution

20  amount.  Mr. Bowman is fully committed to paying that as

21  soon as possible.  I have no doubt that he will do so.

22      For the Court's information, I believe that entire

23  amount was for the Crime Victim Compensation Fund because

24  they have reimbursed the victim.  Mr. Bowman is working

25  full time, so he'll be able to make that payment in a

EXHIBIT C

1    timely fashion.

2        It's also appropriate based on the facts of the case

3    and the fact that Mr. Bowman is 24 with no history, not

4    even so much as a speeding ticket.

5        And so I would ask the Court, for those reasons, to

6    follow the agreement today.

7            MR. RAINS:  Your Honor, if I may add something?

8            THE COURT:  You may.

9            MR. RAINS:  My understanding is that the victim

10   still potentially has pending costs associated with this,

11   including lost wages and other things that are being

12   reviewed by the Crime Victims Fund.  So in the plea

13   agreement, if you'll note in the sentencing section, we

14   are requesting that he also reimburse the Crime Victim

15   Compensation Fund for any accruing costs over the two-year

16   deferment period.  I'm not sure if that's something that

17   the Court would allow, but the State would request that as

18   well.

19       And then, of course, with the Misdemeanor Probation,

20   that he be ordered to abide by all conditions imposed by

21   that office.

22           THE COURT:  I guess I have a question for you in

23   the sense that by reading this, it looks like I'm

24   sentencing him to six months to the Detention Center and

25   deferring that for two years; or am I just deferring the

EXHIBIT C

1    imposition of sentence for a period of two years in this

2    matter?

3              MR. RAINS:  I believe if you -- Correct me if I'm

4    wrong.  If you deferred complete imposition of sentence,

5    would you still be able to order restitution?

6              MS. GANNON-NAGLE:  Yes.

7              THE COURT:  I believe so.

8              MS. GANNON-NAGLE:  Yes.

9              MR. RAINS:  Okay.

10             THE COURT:  But I'm just a little bit confused

11   because I don't know that I've entered a sentence wherein

12   I've sentenced somebody and then deferred --

13             MR. RAINS:  The agreement was for a deferred

14   imposition.

15             MS. GANNON-NAGLE:  Yes.  Judge, our understanding

16   is it's a deferred imposition of sentence with the

17   restitution to be --

18             THE COURT:  For two years.  So I'm not actually

19   sentencing him to six months at this time; I'm just

20   deferring imposition of sentence at this time.

21             MS. GANNON-NAGLE:  That's correct.

22             THE COURT:  I just wanted to clarify that,

23   because the way I'm reading this, it doesn't necessarily

24   read that way.

25             MS. GANNON-NAGLE:  Yes.  That's correct, Judge.

EXHIBIT C

1       And also for the Court's information, we do not

2    object, and it was part of the agreement, that ongoing

3    Crime Victim Fund restitution requests will be paid by

4    Mr. Bowman as well.

5           THE COURT:  Okay.  Mr. Bowman, is there anything

6    you'd like to say before I proceed with sentencing?

7           MS. GANNON-NAGLE:  He does have a statement,

8    Judge.  It's on his phone, so I informed him that he could

9    read off that if he'd like.

10          THE COURT:  He certainly may.

11      And you don't have to stand.  You can sit down if you

12   would like.

13          THE DEFENDANT:  Thank you.

14      This letter is for Josh, Josh's wife, the Bates

15   family, and the courtroom.  I want to apologize for my

16   actions that took place in February at Silver Bow Pizza.

17   It was never my intention for what happened that night.  I

18   deeply regret what happened and feel terrible as to what

19   has happened to Josh.  I wasn't raised to settle my

20   differences with anger or conflict, but with communication

21   and understanding those differences.  If I could take it

22   back, I would in a heartbeat.

23      Josh, Josh's family, Bates family, and courtroom, from

24   the bottom of my heart, I'm sorry.  I just hope in the

25   future we can all be on good terms with Chase, Brandon,

EXHIBIT C

1    and my nephew, Jaden.  I hope you guys can accept this

2    apology from me.  Taylor Bowman.

3             THE COURT:  Thank you.

4       Is there any reason why sentence should not be

5    pronounced at this time?

6             MS. GANNON-NAGLE:  No, Your Honor.

7             THE COURT:  All right.  It is the sentence and

8    judgment of the Court that the sentence imposed will be

9    the sentence agreed to by the parties.  The Court will

10   defer imposition of sentence in this matter for a period

11   of two years.

12       The Defendant will be ordered to pay restitution that

13   currently sits at $4,634.25 and will also be ordered to

14   pay any restitution that is incurred in the next two years

15   during this deferred imposition of sentence.  The

16   Defendant will also be subject to surcharges in the amount

17   of $75 and will also be subject to any and all terms and

18   conditions as deemed appropriate by Misdemeanor Probation.

19       The Court finds that this is an appropriate sentence

20   under the circumstances and that it does provide for

21   punishment and opportunity of rehabilitation, and it does

22   provide for protection because if the Defendant fails to

23   comply with these conditions of probation, he'll be back

24   before me with a sentence hanging over his head and being

25   incarcerated.

EXHIBIT C

1    Mr. Bowman, when my written judgment comes out at a

2    later date, if it does not comply with what I've stated

3    orally here today, you will have 120 days to file an

4    objection.  Failure to do so in that time will result in a

5    waiver of that objection.  Do you understand that?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Is there anything further from the

8    State?

9            MR. RAINS:  No, Your Honor.

10            THE COURT:  Anything further from the Defense?

11            MS. GANNON-NAGLE:  No, Your Honor.  Thank you.

12            THE COURT:  Mr. Bowman, I appreciate your letter,

13    and I hope you live up to what you stated in that letter.

14            THE DEFENDANT:  Absolutely.  Thank you,

15    Your Honor.

16            THE COURT:  Best of luck to you.

17                    * * * * * * *

18

19

20

21

22

23

24

25

EXHIBIT C

```
                    COURT REPORTER'S CERTIFICATE


STATE OF MONTANA          )
                           ss.
COUNTY OF LEWIS AND CLARK  )



        I, CHERYL A. ROMSA, a pro tem court reporter,

residing in Helena, Montana, do hereby certify:


        That the foregoing proceedings were reported by

me in shorthand and later transcribed into typewriting;

and that the foregoing -15- pages constitute a true and

accurate transcription of my stenotype notes of the

proceedings.


        DATED this the 2nd day of November, 2023.


                          /s/Cheryl A. Romsa
                          CHERYL A. ROMSA
                          Pro Tem Court Reporter
```

EXHIBIT C





Safeco Insurance Company of America
P.O. Box 5014
Scranton, PA 18505-5014

### CONTACT US

Meredith.Aronson@LibertyMutual.com

Direct:    509-944-8407
Fax:       888-268-8840

**Safeco Insurance Company of America**
P.O. Box 5014
Scranton, PA 18505-5014
800-332-3226

Safeco.com

Taylor Bowman
PO Box 884
Whitehall, MT 59759

July 21, 2023

Claim Number:              053539835-01
Date of Incident:          02/17/2023
Insured(s):                TAYLOR BOWMAN
Plaintiff:                 Josh Henderson
Policy Number:             OM2768369
Underwriting Company:      Safeco Insurance Company of America

Dear  Mr. Bowman,

This letter confirms our receipt of the above-captioned Lawsuit in which you have been named as a
defendant. This letter also provides our coverage position regarding the Lawsuit. Based on the Lawsuit
and known facts, we will defend you for the Lawsuit, subject to this reservation of rights to deny insurance
coverage, in whole or in part, at a later date as warranted. We also reserve the right to amend or
supplement this coverage position as our investigation continues and as the Lawsuit progresses. The
reasons for our current coverage position and reservation of rights are described below.

### Lawsuit Details

The Lawsuit filed by Josh Henderson ("Plaintiff") against you alleges that:

You injured him in an altercation at Silver Bow Pizza.

The above information summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the
complete allegations. Please note that Silver Bow Pizza is not an insured under this policy and there is no
coverage for this entity's defense or indemnification for Silver Bow Pizza under this policy.

### Policy Information

We issued the following Homeowner's Policy to ROBERT BOWMAN

EXHIBIT D



Policy Number:        OM2768369
Policy Period:        12/11/2022– 12/11/2023

The applicable Policy form and endorsements state in relevant part as follows:

INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy. This policy applies only to losses occurring during the policy period.

…

SECTION II — LIABILITY COVERAGES

LIABILITY LOSSES WE COVER
COVERAGE E — PERSONAL LIABILITY
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

COVERAGE F — MEDICAL PAYMENTS TO OTHERS We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than residence employees. As to others, this coverage applies only:
1. to a person on the insured location with the permission of any insured; or
2. to a person off the insured location, if the bodily injury:
   a. arises out of a condition on the insured location or the ways immediately adjoining;
   b. is caused by the activities of any insured;
   c. is caused by a residence employee in the course of the residence employee's employment by any insured; or
   d. is caused by an animal owned by or in the care of any insured.
…
LIABILITY LOSSES WE DO NOT COVER
1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
   a. which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; This exclusion applies even if:
      (1) such bodily injury or property damage is of a different kind or degree than expected or intended; or
      (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended.
…

b. which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether or not any insured is charged or convicted of a violation of criminal law, or local or municipal ordinance.

…

k. arising out of physical or mental abuse, sexual molestation or sexual harassment.

POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:

a. the "named insured" shown in your Policy Declarations; and if a resident of the same household:

b. the spouse;

c. the civil partner by civil union licensed and certified by the state; or

d. the domestic partner.

3. In addition, certain words and phrases are defined as follows:

…

g. "Insured" means:

(1) you; and

(2) so long as you remain a resident of the residence premises, the following residents of the residence premises:

(a) your relatives;

(b) any other person under the age of 24 who is in the care of any person described in (1) or (2)(a) above.

Anyone described above who is a student temporarily residing away from your residence premises while attending school shall be considered a resident of your residence premises.

…

h. "Insured location" means:

(1) the residence premises;

(2) that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

(3) any premises not owned by you which you have the right or privilege to use arising out of h.1. or h.2. above;

(4) any part of a premises not owned by any insured but where any insured is temporarily residing;

(5) vacant land, including that which is vacant except for a fence, owned by or rented to any insured other than farmland;

(6) land owned by or rented to any insured on which a one, two, three or four family dwelling is being constructed as a residence for any insured;

(7) individual or family cemetery plots or burial vaults of any insured; or

(8) any part of a premises occasionally rented to any insured for other than business purposes.

i. "Occurrence" means an accident, including exposure to conditions which results in:

(1) bodily injury; or

(2) property damage;

during the policy period. Repeated or continuous exposure to the same general

conditions is considered to be one occurrence.

...

The Policy is incorporated by reference into this letter in its entirety.  Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**Our Coverage Position**

Based on the information available, the reasons for our reservation of rights under the Policy or under applicable law include, but are not limited to, the following:

- The allegations against you include assault and battery. To the extent that damages are awarded arising from actions by you that are deemed as expected or intended, there may not be coverage.
- To the extent that damages are awarded arising out of your violation of a criminal law, whether or not you are convicted of any violations, there may not be coverage.
- To the extent damages are awarded against you arising from your physical abuse of the Plaintiff, there may not be coverage under this policy.
- To the extent that assault and battery are intentional acts and not accidental, they do not meet the definition of an "occurrence" and may not be covered.
- To the extent you do not meet the definition of an "insured," there may not be coverage.

Our provision of defense in this Lawsuit is subject to a reservation of our right to deny coverage (including any obligation to indemnify) for any settlement or judgment paid or incurred as a result of this Lawsuit, as well as our right to contest the existence of coverage in a declaratory judgment action. To the extent permitted by applicable law, we reserve the right to (1) withdraw from the defense provided that we have no obligation to defend in this Lawsuit, (2) seek allocation and/or reimbursement of defense costs paid in this action in whole or in part, and (3) intervene in the Lawsuit for purposes of submitting proposed special interrogatories or verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage.

Please note we will not pay for defense fees or costs incurred prior to tender of this claim unless required by law, or for any fees or costs relating to any insurance coverage action or advice, or any fees and costs incurred relative to any claim you may file in this Lawsuit.

If you have not done so already, please immediately provide notice of this claim to every insurer whose coverage is potentially implicated. For each such insurer, please provide us with the insurer name; the policy periods and limits of liability of all policies issued; and the name, address and telephone number of a contact person. We also request that you provide us copies of letters notifying each such insurer of this claim, and of any and all written responses.

Although we tried to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be understood as a waiver or estoppel of any right or basis we have to disclaim coverage under the policy or applicable law, and we reserve all rights in this regard.

If you have any other information that you believe may impact our coverage position, we request you bring such information or pleadings to our immediate attention, so we may assess whether such information or pleading impacts our coverage position or obligations. Finally, if you receive an amended Lawsuit, please provide us with a copy for our investigation.

**We're Here To Help**

If you have any additional information, questions or comments related to this letter, please feel free to call



me at 509-944-8407 or email me at Meredith.Aronson@LibertyMutual.com.

Sincerely,
MEREDITH ARONSON
Claims Department

EXHIBIT D





Safeco Insurance Company of America
P.O. Box 5014
Scranton, PA 18505-5014

## CONTACT US

Meredith.Aronson@LibertyMutual.com

Direct:    509-944-8407
Fax:       888-268-8840

**Safeco Insurance Company of America**
P.O. Box 5014
Scranton, PA 18505-5014
800-332-3226

Safeco.com

Taylor Bowman
PO Box 884
Whitehall, MT 59759-0884

September 25, 2023

Claim Number:            053539835-01
Date of Incident:        02/17/2023
Insured(s):              ROBERT BOWMAN
Plaintiff:               Josh Henderson
Policy Number:           OM2768369
Underwriting Company:    Safeco Insurance Company of America

Dear  Mr. Bowman

This letter confirms our receipt of the above-captioned Lawsuit in which you have been named as a defendant. This letter also provides our coverage position regarding the Lawsuit. Based on the Lawsuit and known facts, we will defend you for the Lawsuit, subject to this reservation of rights to deny insurance coverage, in whole or in part, at a later date as warranted. We also reserve the right to amend or supplement this coverage position as our investigation continues and as the Lawsuit progresses. The reasons for our current coverage position and reservation of rights are described below.

**Lawsuit Details**

The Lawsuit filed by Josh Henderson ("Plaintiff") against you alleges that:

You injured him in an altercation at Silver Bow Pizza.

The above information summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the complete allegations.

**Policy Information**

We issued the following Homeowner's Policy to ROBERT BOWMAN

ROR Reservation of Rights 053539835-01

EXHIBIT E



Policy Number:      OM2768369
Policy Period:       12/11/2022– 12/11/2023

The applicable Policy form and endorsements state in relevant part as follows:

INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy. This policy applies only to losses occurring during the policy period.

…

SECTION II — LIABILITY COVERAGES

LIABILITY LOSSES WE COVER
COVERAGE E — PERSONAL LIABILITY
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

COVERAGE F — MEDICAL PAYMENTS TO OTHERS
We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than residence employees. As to others, this coverage applies only:
1. to a person on the insured location with the permission of any insured; or
2. to a person off the insured location, if the bodily injury:
a. arises out of a condition on the insured location or the ways immediately adjoining;
     b. is caused by the activities of any insured;
     c. is caused by a residence employee in the course of the residence employee's employment by any insured; or
     d. is caused by an animal owned by or in the care of any insured.
…
LIABILITY LOSSES WE DO NOT COVER
1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
     a. which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; This exclusion applies even if:
        (1) such bodily injury or property damage is of a different kind or degree than expected or intended; or
        (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended.
…
     b. which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether or not any insured is charged or convicted of a violation of criminal law, or local or municipal ordinance.



Safeco Insurance™
A Liberty Mutual Company

…

k. arising out of physical or mental abuse, sexual molestation or sexual harassment.

…

POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:
   a. the "named insured" shown in your Policy Declarations; and if a resident of the same household:
   b. the spouse;
   c. the civil partner by civil union licensed and certified by the state; or
   d. the domestic partner.

3. In addition, certain words and phrases are defined as follows:

…

   g. "Insured" means:
      (1) you; and
      (2) so long as you remain a resident of the residence premises, the following residents of the residence premises:
         (a) your relatives;
         (b) any other person under the age of 24 who is in the care of any person described in (1) or (2)(a) above.
         Anyone described above who is a student temporarily residing away from your residence premises while attending school shall be considered a resident of your residence premises.

…

   h. "Insured location" means:
      (1) the residence premises;
      (2) that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;
      (3) any premises not owned by you which you have the right or privilege to use arising out of h.1. or h.2. above;
      (4) any part of a premises not owned by any insured but where any insured is temporarily residing;
      (5) vacant land, including that which is vacant except for a fence, owned by or rented to any insured other than farmland;
      (6) land owned by or rented to any insured on which a one, two, three or four family dwelling is being constructed as a residence for any insured;
      (7) individual or family cemetery plots or burial vaults of any insured; or
      (8) any part of a premises occasionally rented to any insured for other than business purposes.

   i. "Occurrence" means an accident, including exposure to conditions which results in:
      (1) bodily injury; or
      (2) property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

…



The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**Our Coverage Position**

Based on the information available, the reasons for our reservation of rights under the Policy or under applicable law include, but are not limited to, the following:

- The allegations against you include assault and battery. To the extent that damages are awarded arising from actions by you that are deemed as expected or intended, there may not be coverage.
- To the extent that damages are awarded arising out of your violation of a criminal law, whether or not you are convicted of any violations, there may not be coverage.
- To the extent damages are awarded against you arising from your physical abuse of the Plaintiff, there may not be coverage under this policy.
- To the extent that assault and battery are intentional acts and not accidental, they do not meet the definition of an "occurrence" and may not be covered.
- To the extent you do not meet the definition of an "insured," there may not be coverage.

Please make arrangements with your criminal defense attorney to schedule a verbal statement with me at your earliest convenience.

Please be advised that, subject to the foregoing reservation of rights, we retained Ryan Gustafson with Matovich, Keller & Huso to defend you in this Lawsuit. There is also a separate claim open to handle the defense of your claim, as this claim is handling the coverage investigation only. The adjuster handling your defense is Haley Binchus, and she can be reached at 509-960-3338. You may wish to provide a copy of this letter to the defense counsel. In addition, you have the right to retain your own personal counsel at your expense for advice on defense and coverage issues.

Our provision of defense in this Lawsuit is subject to a reservation of our right to deny coverage (including any obligation to indemnify) for any settlement or judgment paid or incurred as a result of this Lawsuit, as well as our right to contest the existence of coverage in a declaratory judgment action. To the extent permitted by applicable law, we reserve the right to (1) withdraw from the defense provided that we have no obligation to defend in this Lawsuit, (2) seek allocation and/or reimbursement of defense costs paid in this action in whole or in part, and (3) intervene in the Lawsuit for purposes of submitting proposed special interrogatories or verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage.

Please note we will not pay for defense fees or costs incurred prior to tender of this claim unless required by law, or for any fees or costs relating to any insurance coverage action or advice, or any fees and costs incurred relative to any claim you may file in this Lawsuit.

If you have not done so already, please immediately provide notice of this claim to every insurer whose coverage is potentially implicated. For each such insurer, please provide us with the insurer name; the policy periods and limits of liability of all policies issued; and the name, address and telephone number of a contact person. We also request that you provide us copies of letters notifying each such insurer of this claim, and of any and all written responses.

Although we tried to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be understood as a waiver or estoppel of any right or basis we have to disclaim coverage under the policy or applicable law, and we reserve all rights in this regard.

EXHIBIT E



If you have any other information that you believe may impact our coverage position, we request you bring such information or pleadings to our immediate attention, so we may assess whether such information or pleading impacts our coverage position or obligations. Finally, if you receive an amended Lawsuit, please provide us with a copy for our investigation.

**We're Here To Help**

If you have any additional information, questions or comments related to this letter, please feel free to call me at 509-944-8407 or email me at Meredith.Aronson@LibertyMutual.com.


Sincerely,
MEREDITH ARONSON
Claims Department





Safeco Insurance Company of America
P.O. Box 5014
Scranton, PA 18505-5014

## CONTACT US

Meredith.Aronson@safeco.com

Direct:    509-944-8407
Fax:       888-268-8840

**Safeco Insurance Company of America**
P.O. Box 5014
Scranton, PA 18505-5014
800-332-3226

Safeco.com

Taylor Bowman
PO Box 884
Whitehall, MT 59759-0884

January 12, 2024

| | |
|---|---|
| Claim Number: | 053539835-01 |
| Date of Incident: | 02/17/2023 |
| Insured(s): | TAYLOR BOWMAN |
| Plaintiff: | Josh Henderson |
| Policy Number: | OM2768369 |
| Underwriting Company: | Safeco Insurance Company of America |

Dear Taylor,

This letter confirms our receipt of the above-captioned Lawsuit in which you have been named as a defendant. This letter also provides our coverage position regarding the Lawsuit. Based on the Lawsuit and known facts, we do not believe there is coverage for the claims asserted against you.

As you are aware, we have agreed to defend you in the above captioned lawsuit under a reservation of rights, as outlined in our prior correspondence to you. At this time, we ask that you consider withdrawing your tender of defense within the next thirty days. If you choose not to withdraw your tender, we will file a Declaratory Judgment Action against you, asking the court to provide a ruling that Safeco has no duty to defend or indemnify you with regard to the Lawsuit.

We also reserve the right to amend or supplement this coverage position as our investigation continues and as the Lawsuit progresses. The reasons for our current coverage position and reservation of rights are described below.

**Lawsuit Details**

The Lawsuit filed by Josh Henderson ("Plaintiff") against you alleges that:

You injured him in an altercation at Silver Bow Pizza.

EXHIBIT F



The above information summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the complete allegations.

**Policy Information**

We issued the following Homeowner's Policy to ROBERT BOWMAN

  Policy Number:     OM2768369
  Policy Period:     12/11/2022– 12/11/2023

The applicable Policy form and endorsements state in relevant part as follows:

INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy. This policy applies only to losses occurring during the policy period. …

SECTION II — LIABILITY COVERAGES

LIABILITY LOSSES WE COVER
COVERAGE E — PERSONAL LIABILITY
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

COVERAGE F — MEDICAL PAYMENTS TO OTHERS
We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than residence employees. As to others, this coverage applies only:
1. to a person on the insured location with the permission of any insured; or
2. to a person off the insured location, if the bodily injury:
       a. arises out of a condition on the insured location or the ways immediately adjoining;
       b. is caused by the activities of any insured;
       c. is caused by a residence employee in the course of the residence employee's employment by any insured; or
       d. is caused by an animal owned by or in the care of any insured.
…

LIABILITY LOSSES WE DO NOT COVER
1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
       a. which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; This exclusion applies even if:
              (1) such bodily injury or property damage is of a different kind or degree than

**Safeco Insurance**™
A Liberty Mutual Company

expected or intended; or

    (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended.

…

    b. which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether or not any insured is charged or convicted of a violation of criminal law, or local or municipal ordinance.

…

    k. arising out of physical or mental abuse, sexual molestation or sexual harassment.

…

POLICY DEFINITIONS

1. Throughout this policy, "you" and "your" refer to:

    a. the "named insured" shown in your Policy Declarations; and if a resident of the same household:

    b. the spouse;

    c. the civil partner by civil union licensed and certified by the state; or

    d. the domestic partner.

…

    i. "Occurrence" means an accident, including exposure to conditions which results in:

        (1) bodily injury; or

        (2) property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

…

The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent to this matter, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**Our Coverage Position**

Based on the information available, the reasons for our reservation of rights under the Policy or under applicable law include, but are not limited to, the following:

- Your criminal defense attorney provided a transcript of the hearing on your plea agreement in which you stated in court that your actions were intentional. Intentional acts do not meet the definition of an "occurrence" under the policy.
- To the extent that damages are awarded arising from actions by you that are deemed as expected or intended, there may not be coverage.
- To the extent that damages are awarded arising out of your violation of a criminal law, whether or not you are convicted of any violations, there may not be coverage.
- To the extent damages are awarded against you arising from your physical abuse of the Plaintiff, there may not be coverage under this policy.

As you are aware, subject to the foregoing reservation of rights, we retained Ryan Gustafson with Matovich, Keller & Huso to defend you in this Lawsuit. In addition, you have the right to retain your own personal counsel at your expense for advice on defense and coverage issues.

Our provision of defense in this Lawsuit is subject to a reservation of our right to deny coverage (including any obligation to indemnify) for any settlement or judgment paid or incurred as a result of this Lawsuit, as well as our right to contest the existence of coverage in a declaratory judgment action. To the extent permitted by applicable law, we reserve the right to (1) withdraw from the defense provided that we have



no obligation to defend in this Lawsuit, (2) seek allocation and/or reimbursement of defense costs paid in this action in whole or in part, and (3) intervene in the Lawsuit for purposes of submitting proposed special interrogatories or verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage.

Please note we will not pay for defense fees or costs incurred prior to tender of this claim unless required by law, or for any fees or costs relating to any insurance coverage action or advice, or any fees and costs incurred relative to any claim you may file in this Lawsuit.

Although we tried to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be understood as a waiver or estoppel of any right or basis we have to disclaim coverage under the policy or applicable law, and we reserve all rights in this regard.

If you have any other information that you believe may impact our coverage position, we request you bring such information or pleadings to our immediate attention, so we may assess whether such information or pleading impacts our coverage position or obligations. Finally, if you receive an amended Lawsuit, please provide us with a copy for our investigation.

**We're Here To Help**

If you have any additional information, questions or comments related to this letter, please feel free to call me at 509-944-8407 or email me at Meredith.Aronson@safeco.com.

Sincerely,
Meredith Aronson
Claims Department